FIDELITY MUTUAL LIFE ASSOCIATION v. W. T. HARRIS ET AL.

No. 901. Decided June 11, 1900.

**1. Insurance—Warranties—Written Application—Oral Statements.**

The validity of an insurance policy, issued on a written application and making the statements therein warranties, must depend on the truth of such written statements, regardless of any oral communications made by the insured to the soliciting agent. (P. 34.)

**2. Corporation—Powers—Limitation of Laws of State Creating It.**

While the limitation of the powers of a corporation by its charter or the laws under which it is incorporated restricts its power to act or contract in another State, the same effect will not be given to the general statute laws of the State creating it. (P. 34.)

**3. Contract—Lex Loci—Test of Where Made.**

Contracts are governed by the laws of the place where they are made, unless a different place is fixed by the contract for its performance, the place where made being tested by the acquiescence or final agreement of minds by which the contract is concluded. (Pp. 34, 35.)

**4. Same—Insurance.**

Contracts of insurance on applications made in one State and forwarded for acceptance to the domicile of the insurer in another, are ordinarily treated as made at such domicile, because the act of the insurer in signifying its acceptance there completes the contract. (P. 35.)

**5. Same—Contract Not Binding Till Delivery.**

The first payment being forwarded with application for insurance, the provision of a policy that it "shall not be binding until delivery during the lifetime and good health of the applicant and until the first payment due hereon has been made" did not have the effect to suspend the contract till delivered to insured and make the place of delivery that of the contract, where the policy was forwarded to the insurer's agent for unconditional delivery. (Pp. 35-37.)

**6. Same—Place of Performance.**

The presumption that a contract of insurance issued and forwarded for unconditional delivery was presumed to be made with reference to the laws of the State where issued is strengthened where it appears from the whole transaction that the parties contemplated performance in that State. (P. 37.)

**7. Lex Loci—Cases Distinguished.**

Cases denying the application of the laws of the place of contract where their application is forbidden by the laws of the forum distinguished. (P. 37.)

8. **Representations—Materiality—Question of Law—Law of Place of Contract.**

Whether representations in an application for insurance were material is ordinarily a question for the jury, unless so clear that reasonable minds could not differ about it; but upon a contract made in and governed by the laws of another State in which representations by the insured as to previous medical attendance are held material as matter of law, such rule is one of substantive law, not merely of procedure, and decisive of the materiality of such representations. (Pp. 37-39.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Wood County.

*Perkins, Gilbert & Hall* (*R. C. Milliken* on brief in appellate court), for plaintiff in error.—Where the insured is a resident of Texas, and the application for the policy was made and signed there, and the policy delivered there, and where the policy does not provide that the premiums are payable elsewhere, nor that the insurance in case of loss is payable elsewhere, the contract is a Texas contract to be construed in accordance with its laws. Texas Rev. Stats., art 3070; Insurance Co. v. Ice Co., 64 Texas, 582; Assurance Society v. Clements, 140 U. S., 226.

If the statute law of Pennsylvania is to be held applicable in this case, then the construction placed upon that particular statute sought to be enforced here and the interpretation thereof by the Supreme Court of Pennsylvania is binding and conclusive upon the courts of Texas; and according to such construction and interpretation the warranties in this case are material to the risk as a matter of law. March v. Insurance Co., 40 Atl. Rep., 1100; Lutz v. Insurance Co., 40 Atl. Rep., 1104; Wall v. Society, 179 Pa. St., 355; Aid Society v. O'Hara, 120 Pa. St., 256; Aid Society v. White, 100 Pa. St., 12.

The Court of Civil Appeals erred in its decision of this case, because it is contrary to the decisions of the Supreme Court of Texas, in that it abrogates and annuls the warranties contained in the contract recovered on, and substitutes a contract not made by the parties for the one originally made by them. The law of Texas is that warranties are binding upon applicants for life insurance, and false statements in the application render the policy void. Bank v. Insurance Co., 62 Texas, 461; Fitzmaurice v. Insurance Co., 84 Texas, 61; Hutchison v. Insurance Co., 39 S. W. Rep., 325; Snow v. Cotton Co., 34 S. W. Rep., 177; Insurance Co. v. Hazlewood, 75 Texas, 338.

Where the questions and answers in an application for life insurance are clearly material, it is the duty of the court to determine the question of materiality, instead of submitting that question to the jury, under both the laws of Pennsylvania and Texas. Lutz v. Insurance Co., 40 Atl. Rep., 1104; Insurance Co. v. Harris, 40 S. W. Rep., 342; Insurance Co. v. Kempner, 27 S. W. Rep., 122; Wilson v. Insurance Co., 33 S. W. Rep., 1085; Insurance Co. v. Long, 51 Texas, 89, 93.

The Court of Civil Appeals erred in holding that when it is uncontested that assured made false statements as to medical attendance,

by failing to mention in his application, or otherwise, four or five doctors who had successively treated him for a period covering some eighteen months next preceding his application, and where two of said physicians were of the opinion that assured had consumption when they were called to treat him, of which deceased really died about eighteen months after the issuance of the policy, that such false statement was not material to the risk as a matter of law, both in Pennsylvania and Texas.

*Morris & Crow* and *Felix J. McCord*, for defendants in error.— "Where applicant could not read or write, and was not informed of the purport of the application which was written by the agent, and was not questioned as to the warranties, or called on to sign the application, the company receiving the premiums is estopped from setting up a breach of the warranties," and the applicant was not bound to read the copy of the application attached to his policy to see if a fraud had been perpetrated on him. O'Rourke v. Insurance Co., 30 N. Y., 215; O'Rourke v. Insurance Co., 31 N. Y., 130; Insurance Co. v. Leon, 37 N. E. Rep., 584; Boetcher v. Insurance Co., 47 Iowa, 253; Donnelly v. Insurance Co., 70 Iowa, 693; Brown v. Insurance Co., 65 Mich., 306; Temmink v. Insurance Co., 72 Mich., 388; Dunbar v. Insurance Co., 72 Wis., 492; Texas Banking and Insurance Co. v. Stone, 49 Texas, 5; Bacon Benefit Societies and Life Ins., secs. 221, 428; May on Ins., 2 ed., 213, 180a, note 7; Insurance Co. v. Blodgett, 27 S. W. Rep., 286; Insurance Co. v. Coffman, 32 S. W. Rep., 810; Insurance Co. v. Robison, 58 Fed. Rep., 723.

A policy executed wholly in a foreign State upon an application accompanied by the premium for the first year, both sent to and to be passed upon in the foreign State, and policy mailed to the applicant by a corporation organized under the laws of said foreign State, and not to be countersigned by a local agent, and which requires premiums to be paid only on a receipt signed by the secretary and treasurer residing in a foreign State, and which requires proofs of death to be made and sent to the home office in a foreign State, and all questions arising upon the policy to be considered and passed upon and rights guaranteed, or waived, only by the home office in the said foreign State, is governed by the laws of that State. The place of the contract is the place of the acceptance. The acceptance is the test of completion. May on Ins., 2 ed., sec. 66; Bacon, Benefit Societies and Life Ins., sec. 175; Insurance Co. v. Tuttle, 40 N. J. L., 476; Voorheis v. Peoples M. B. Soc., 91 Mich., 469.

The general laws of a State from which a corporation gets its charter define and limit the powers of the corporation created by that State, and apply to its contracts in other States. Rue v. Railway, 74 Texas, 474; Insurance Co. v. Fields, 26 S. W. Rep., 280; Insurance Co. v. Smith, 41 S. W. Rep., 680; Insurance Co. v. Peetz, 47 S. W. Rep., 687; Mullen v. Insurance Co., 89 Texas, 259; Story on Conflict of

Laws, 174, 175; Matthews v. Skinker, 62 Mo., 331; Black v. Canal Co., 22 N. J. Eq., 422; Bank v. Bank, 9 Am. Dec., 116; Field on Corp., 33, 34; Hardware Co. v. Manufacturing Co., 86 Texas, 143; Insurance Co. v. Oster, 74 Ill. App., 139; Insurance Co. v. Wise, 34 Md., 597; McKim v. Glenn, 66 Md., 479; Insurance Co. v. Ficklin, 74 Md., 172.

The law of Pennsylvania as contained in the act approved June 23, 1885, as it appears in evidence in the record, should be held applicable in this case, but not other laws and matters of practice which obtain in Pennsylvania, and which are not in evidence, and would not apply if they were, and which were in force in that State before the Act of 1885 was adopted, as appears by the decisions of the Supreme Court of Pennsylvania, cited by appellant. The courts in Texas can not as matter of law determine if a warranty is material to the risk. However, in both Texas and Pennsylvania upon a controverted issue it is the province of the jury, under appropriate instructions, to pass upon the facts, and, in this case, it was proper to submit to the jury the materiality of the representations contained in the application, and their truth or falsity, and the good or bad faith of Harris in making the same. Hermany v. Fidelity M. L. Assn., 151 Pa. St., 17; Insurance Co. v. Trust Co., 77 Fed. Rep., 413.

If the Pennsylvania law bearing on the subject of warranties in life insurance policies, and not the Texas law, applies, then the failure to state in the application the attendance of a physician would not be material if he was only called for a temporary ailment, not serious in its nature or not affecting the general health or constitution, and the failure to state the existence of an ailment would not be material if only temporary, not affecting or impairing the constitution; nor would the failure to state the existence of a latent disease of which the party had no knowledge avoid the policy, since good faith in making any statement is all that is required. Brown v. Insurance Co., 65 Mich., 306-312; Plumb v. Insurance Co., 65 N. W. Rep., 611; 22 S. W. Rep. (Tenn.), 204; Rand v. Insurance Co., 37 S. W. Rep. (Tenn.), 7; Insurance Co. v. Baker, 31 S. W. Rep., 1072.

The court erred in assuming Harris was bound by the warranties contained in his application and whether the policy is a Texas or a Pennsylvania contract can make no difference, and appellee contends the question of whether Harris was bound by the warranty was one of fact for the jury, since it was shown Harris made an oral application for the policy, and as he could not read or write, the application was prepared by the soliciting agent Ratliff, who procured some one to sign Harris' name thereto, and neither was the application or the warranty therein contained ever read to Harris before or after his name was signed thereto. O'Rourke v. Insurance Co., 30 N. Y. S., 215 (Dist. Ct.) ; same v. same, 31 N. Y. S., 130 (Common Pleas).

That an insurance company may limit the power of its agent is true, but it is equally true that if that agent in the discharge of his

duty and within the scope of his employment practice a fraud on an applicant in procuring his application for a policy, the agent's acts bind and estop the company; and it is only when the agent ceases to act for the company and enters into collusion with the applicant to defraud the company that his acts cease to be binding on the company. Acts of agents who prepare applications bind and estop the company, and it is no wrong in the applicant to neglect to read the copy of the application attached to his policy, as that relates to a transaction already closed. In taking Harris' application Ratliff and the medical examiner, Dr. Penn, were on the ground as the company itself, embodying in themselves all the powers of the company, and as to all matters connected with the taking of that application they were the company, and every fact of which they had notice was notice to the company. If appellant did not know when the policy was issued that Harris could not read and write, and if, after that fact was brought to appellant's knowledge, it accepted payment of premiums, it thereby waived its right to forfeitures for said cause and on any other ground arising directly out of said condition of illiteracy. Texas Insurance Co. v. Stone, 49 Texas, 4; Insurance Co. v. Parham, 80 Texas, 518; Insurance Co. v. Blodgett, 27 S. W. Rep., 286; Insurance Co. v. Coffman, 32 S. W. Rep., 810; Bacon, Benefit Societies and Life Ins., secs. 221, 428; May on Ins., 2 ed., pp. 213 and 180a, note 7; Insurance Co. v. Leon, 37 N. E. Rep., 584 (Ind.); Boetcher v. Insurance Co., 47 Iowa, 253; Donnelly v. Insurance Co., 70 Iowa, 693; Brown v. Insurance Co., 65 Mich., 306; Dunbar v. Insurance Co., 72 Wis., 492; Temmink v. Insurance Co., 72 Mich., 388; Insurance Co. v. Robison, 58 Fed. Rep., 723; O'Rourke v. Insurance Co., 30 N. Y. S., 215 (Dist. Ct.); O'Rourke v. Insurance Co., 31 N. Y. S., 130 (Common Pleas); Morris v. Insurance Co., 43 S. W. Rep., 898.

Defendant in error submits that on three well defined propositions the policy in question should be governed by the laws of Pennsylvania. 1. By the contract and the facts that enter into and become a part thereof and the intention of the parties derived therefrom, it is a contract under the laws of Pennsylvania and to be construed by said laws—especially since this construction upholds the policy, while under the laws of Texas it would be annulled and defeated. 2. Appellant is a mutual association and chartered under the laws of Pennsylvania, and it brings into Texas the laws of Pennsylvania applicable to its construction and that uphold rather than defeat the policy. 3. Appellant being a mutual association all its members must and should be on equal footing. Such was evidently the intention of appellant in its organization and in writing the policy herein, otherwise a fraud was practiced on Wm. T. Harris, the insured, which this court will not uphold. That construction should be placed upon the policy consistent with the right and justice that will uphold rather than defeat it. A Pennsylvania policy holder under the same state of facts found by

the jury could collect his policy. Then why should a Texas member be denied a recovery?

[In support of a motion for rehearing, which was overruled, counsel for defendants in error urged the propositions and authorities following.]

The court erred in considering other laws of Pennsylvania than the statute of that State which was introduced in the trial court by pleading and proof of same, since other laws, to be available, should have been plead and proven. The courts of one State will not take judicial notice of the laws of another State, and it will be presumed in the absence of allegation and proof that the laws of another State are the same as the laws of Texas. Armendiaz v. Serna, 40 Texas, 291; James v. James, 81 Texas, 373, 381; Tempel v. Dodge, 89 Texas, 68; Burgess v. Telegraph Co., 92 Texas, 125, 127.

Defendant in error submits that whether this case, as to the only issue now in question, is to be decided by the rules of law and decisions to be found in the Pennsylvania court reports as modified by statute, or alone by the statute of that State in question, or by that statute construed by the rules of law in Texas based upon common sense, reason, and justice, apart from the law of warranties, is of little consequence, since in either case the failure to disclose in the application the attendance of doctors as complained of herein and upon which this court predicates its decision in reversing and rendering the judgment, will not affect the validity of the policy, because such attendance was only for temporary ailments, and the failure to disclose same was ᴜ ᵗ material to the risk and did not evidence any want of good faith and should not avoid the policy.

If the statute of Pennsylvania·of 1895 is alone to be considered by this court as the only law of that State properly before the court having a bearing on this case, then the only contested issue remaining is to be determined by the laws of Texas; and since the effect of a warranty in Texas which will avoid a policy for any false statement—however immaterial and whether made in good faith or not—is eliminated from the case and the said statute of Pennsylvania made to apply, that statute must be interpreted under the rules of law and practice in Texas backed up by a rational, reasonable construction of same, which we submit supports the contention that a misstatement in the application as to a temporary ailment not material to the risk, if made in good faith, will not avoid the policy, nor will a misstatement as to the visit of a doctor for a temporary ailment not affecting or material to the risk, and which does not amount to a serious ailment or a vice in the Constitution, if made in good faith, avoid the policy, because a temporary ailment is not considered a disease in its relation to life insurance. Insurance Co. v. Simpson, 28 S. W. Rep., 837; Insurance Co. v. Simpson, 88 Texas, 333; Insurance Co. v. Baker, 31 S. W. Rep., 1072; Hermany v. Association, 151 Pa., 17; Association v. Ficklin, 74 Md., 172; Association v. Miller, 92 Fed. Rep., 63; Insurance Co. v.

Union Trust Co., 112 U. S., 250; Billings v. Insurance Co., 41 Atl. Rep., 516; Mutual Association v. Ogletree, 25 So. Rep., 869; Brown v. Insurance Co., 65 Mich., 306; Plumb v. Insurance Co., 65 N. W. Rep., 611; Morrison v. Association, 59 Wis., 162; Rand v. Society, 37 S. W. Rep., 7; Woodward v. Insurance Co., 56 S. W. Rep., 1020.

Defendant in error further submits that plaintiff in error, through its soliciting agent Ratliff and examining physician Penn, had notice of the visits of these doctors, upon which this court predicates its reversal, at the time the application was taken, and these facts were plead and proven as an estoppel in the trial court, and plaintiff in error is therefore estopped from avoiding the policy on that account.

Notice to the soliciting agent or to the examining physician in a matter pertaining to their duties and within the scope of their authority is notice to their principal, unless shown to be acting in collusion with the other party, and there is no proof to sustain such a contention in this action. Insurance Co. v. Parham, 80 Texas, 518.

WILLIAMS, ASSOCIATE JUSTICE.—Plaintiff brought this action to cancel a policy for $5000, issued upon the life of W. T. Harris, upon the ground that it was obtained through a fraudulent conspiracy between Harris and one Mattox, by means of false representations and warranties, and upon the further ground that it was a wagering contract. Plaintiff tendered back all premiums paid upon the policy. Harris died pending the suit, and Mattox, as executor of his will, defended the action, and, by cross-petition, sought to recover upon the policy. A judgment of the District Court in favor of the defendant for the amount of the policy having been rendered, and, upon appeal, affirmed by the Court of Civil Appeals, this writ of error is prosecuted from the judgment of that court.

Plaintiff in error is a corporation created under the laws of Pennsylvania, and has its domicile in Philadelphia, and conducts its business there. Harris resided in Texas. His application for insurance and the first premium were delivered in Texas to a traveling soliciting agent of the company, and were by him forwarded through the State agent to the company's office in Philadelphia, and were there accepted by it. The policy was then executed and forwarded to the State agent at Dallas and was delivered by him to the soliciting agent, and was by the latter transmitted to Harris. The policy did not, in express terms, name the place for payment of future premiums, or of the loss in case it should occur. It recited, however, that the contract was made in consideration of the payment of the premiums "to the said association," and that payment of loss will be made after receipt of proofs of loss "at its office in the city of Philadelphia," and "upon presentation and surrender of the policy properly receipted." It further provided that premiums shall not be considered paid "unless receipt shall be given therefor signed by the president and treasurer and countersigned by the agent or person to whom payment is made," and

that the policy "shall not be binding until delivery during the lifetime and good health of the applicant and until the first payment due hereon has been made." The application provided, "the policy issued hereon shall not become binding on the association until the first payment due thereon has been actually received by the association or by its authorized agent during my lifetime and good health."

By a statute of Pennsylvania, it was provided: "Section 1. Be it enacted, etc., that hereafter whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application made in good faith by the applicant shall effect a forfeiture or be a ground of defense ·in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk."

The application and the policy contained provisions sufficient, in the absence of such a statute, to make the statements in the application warranties and to avoid the policy if any of such statements were untrue. The misrepresentations relied on by plaintiff to avoid the policy were the following: First, that applicant, at the date of his application, February 4, 1893, was in good health and free from any and all diseases, sicknesses, ailments, and complaints, trivial and otherwise; second, that he had never had or been afflicted with any sickness, disease, ailment, injury, or complaint, except as hereafter stated, the exception being that he had pneumonia about· fifteen years before, lasting six or eight days, from which his recovery was perfect; third, that the last physician whom he had consulted or who had prescribed for him was Dr. Sam Hart, about three years previously, for an attack of la grippe, which was trivial and of only a few days duration; fourth, that he had not consulted nor been prescribed for by any other physician or medical man during the last ten years; fifth, that he signed the application in his own proper handwriting.

The application also provided that no verbal statement, to whomsoever made, should modify the contract or in any manner affect the rights of the association, unless reduced to writing and presented to and approved by its officers at the home office, no agent or examiner having any authority to make or alter contracts or waive forfeitures, and that the application should be the sole basis of the contract. The policy issued and delivered to Harris had a copy of the application annexed to it on which, in large red letters, was this caution: "Review the declarations made by you as given in this copy of your application, and, if any error has been made, advise the president of the association."

The evidence as to the truth and materiality of some of these representations conflicted. The plaintiff adduced evidence sufficient to show that for several years prior to the date of the application Harris had been in bad health, suffering from affections of the throat or bronchial

tubes or lungs, or all of them; that the attack of la grippe was a severe one and that Harris never recovered from it, but that as a consequence of it, consumption developed and existed when the application was made, and finally caused his death in September, 1894. Harris, whose deposition was taken before his death, admitted that the attack of la grippe was a severe one, and the evidence is practically uncontradicted that its effects lasted for a considerable time, in 1890 and 1891, but, at the same time, his evidence and that of other witnesses for the defendant tended to show that his recovery was complete in the early part of 1891, and that his health was good from then until the date of the application and for some time after, and that the disease of which he died originated in the summer of 1893 from causes unconnected with any previous infirmity. Dr. Sam Hart was the physician who first treated him for this illness in 1890. But subsequently, during that year and 1891, Dr. V. T. Hart, Dr. Cochrane, Dr. Dobbins, and Dr. Goldsmith also treated and prescribed for him. Plaintiff also introduced the testimony of two other physicians who testified that they had been consulted by and prescribed for him; but as to this it may be conceded that there was a conflict of evidence. Harris also testified that Dr. V. T. Hart and Dr. Cochrane merely filled the place of his regular attendant, Dr. Sam Hart, during his absence. And it may be also conceded that if they had been the only physicians who were not mentioned by him, his answer would have been substantially true and not material to the risk. It is, nevertheless, a conceded fact that both Dr. Dobbins and Dr. Goldsmith were consulted with and prescribed for him during the early part of 1891 while he was still suffering from la grippe or its effects. Dr. Goldsmith testified that he found Harris suffering from catarrhal bronchitis, such as is generally considered la grippe, and treated him once and prescribed for him afterwards; did not consider his sickness serious and treated him no further.

Dr. Dobbins testified that he treated Harris from about February 1 until April 1, 1891; found him confined to his bed emaciated and coughing freely, and he was not a sound man physically; thought he either had consumption in its incipiency or would have it as the sequel of la grippe. When he last saw him, about the first of April, he had improved some but was not a sound man. The witness further stated that he gave the treatment gratuitously at the solicitation of the Masonic order, of which he and Harris were members, but his evidence shows and Harris admits that his services were accepted.

It appears that the agent who took the application for insurance wrote the answers and did not read them to Harris after they were reduced to writing. There is evidence that, as given by Harris, the answers were true, except those as to his last physician and those whom he had consulted within ten years. He did not mention other physicians, but said to the agent that he had sometimes obtained medicines from drug stores and perhaps had a physician for colds

or malarial attacks of the common kind, and this statement the agent did not consider material and did not insert in the application. The company, in issuing the policy, acted solely upon the written application, with no knowledge of any verbal statements made by Harris to the agent.

The view taken of the case renders it unnecessary to state the facts upon which the claim that the policy was a wagering one is based.

The trial court held, correctly, we think, that the validity of the policy must depend upon the statements in the written application, regardless of any oral communications made by Harris to the soliciting agent. Upon this point, we need only refer to the following authorities: Fitzmaurice v. Insurance Co., 84 Texas, 61; Insurance Co. v. Fletcher, 117 U. S., 530.

The plaintiff in error contends that the contract was made in Texas and that its effect should be determined by the laws of this State, and that, as the representations were made warranties by the policy, and some of them at least were untrue, the policy is avoided without regard to their materiality. Defendant in error contends that the Pennsylvania statute governs the case because, first, it restricts the capacity to contract of a corporation which derives its existence and all its powers from the laws of that State, which laws follow and control it wherever it goes; second, the contract was made and to be performed in that State. The statute seems to be simply a part of the body of the laws of Pennsylvania regulating contracts of insurance and not one specially defining and limiting the powers of this corporation or of corporations generally. The rule is recognized that a corporation derives all its powers from the law which creates it and that its transactions, wherever they may occur, must be within the powers conferred by that law. This rule is generally held, however, to relate only to the charter of the corporation or to the law under which it is created and by which its powers are defined, and not to general legislation of the State upon other subjects. 2 Mora. on Corp., secs. 967, 968, and cases cited. This contention of defendant in error finds direct sanction, however, in the case of Fidelity Mutual Insurance Company v. Ficklin, 74 Maryland, 172, a case involving this company and the application of the same statute. The necessities of this case do not require a discussion of the principle referred to, and we content ourselves with repeating what we said in the Seiders case: "We are not inclined to hold that a corporation created by the laws of another State brings with it into this State the general statute laws of the State of its creation." 93 Texas, 198.

It is true, however, that the effect of a contract, wherever it may come in question, is to be determined by the law with reference to which the parties contracted, though it be that of another State or country, unless there is something in the law or policy of the forum which forbids the application of the foreign law. The considera-

tions upon which the law applicable to the contract is, to be ascertained are fully discussed and comprehensively stated in the opinion of Justice Matthews in Pritchard v. Norton, 106 United States, 124.

The leading principle is that the law is to govern to which "it is just to presume they (the parties) have intrusted themselves." Unless a contrary intent is to be deduced from the transaction, the presumption is that the parties contracted with reference to the law of the place where the contract was made; but if they have fixed a different place for the performance of it, the law of that place is to govern unless something else appears showing that they had a different intention. Seiders v. Insurance Co., supra; Hall v. Cordell, 142 U. S., 116; Coghlan v. Railway, Id., 101. The place of performance is to be regarded as the same as that at which the contract is made, unless it is to be gathered from the agreement that a different one was fixed. When the contract is made through correspondence, one of the parties being in one State and the other in a different State, it sometimes becomes difficult to determine in which State the contract has been made. The test is generally held to be the acquiescence or final agreement of minds by which the contract is concluded, and the place where that occurs is the place where the contract, for most purposes, is held to have been made. With reference to contracts of insurance, where applications or proposals are taken in one State by an agent having no authority to conclude the contract or bind the company, and are forwarded to the domicile of the company and there accepted and the policy issued, the contract is ordinarily to be treated as having been made at such domicile and to be performed there. Whart. on Conflict of Laws, sec. 465; Bliss on Life Ins., sec. 362; May on Ins., sec. 66, and cases cited. This is true, however, only because the act of the company in signifying its acceptance of the proposal completes the contract, and when, as sometimes happens, other things are to be done before the parties are to be bound, the contract is held to have been made when and where such other things transpire. It is often stipulated in policies that they are not to take effect until the first premium has been paid and the policy has been countersigned by the agent of the company in the place where the applicant resides, and it is held that the contract is to be considered as made where these acts are done.

The policy under consideration required no counter-signature, but the application stipulated that the policy was not to be binding until the first premium had been paid during the lifetime and good health of applicant. Since the premium accompanied the application and was accepted and retained by the company, the issuance of the policy, without other condition than this, would obviously have fixed the time and place when the contract took effect, if it ever took effect at all. If the applicant had then been dead or not in good health, the policy would never have been binding; but as he was alive, it became effectual at once, if he was also in good health, unless other provisions post-

poned its conclusion, since by this clause of the application no provision was made for the subsequent ascertainment of the facts as to good or bad payment, or for the happening of any other event essential to the completion of the contract. The chief difficulty in this branch of the case arises from the provision of the policy that it "shall not be binding until delivery during the lifetime and good health of the applicant and until the first payment due hereon has been made." If the effect of this provision was to keep the contract in suspense until the policy was actually received by Harris, so that it was not to be in force until that event, many authorities would justify the proposition that, as it thus became effective in Texas, the laws of this State would apply. Looking to the whole provision, however, as well as to that contained in the application, we are inclined to view this condition as one generally used in blank policies to cover cases where the first premium has not been paid when the policy issues, but is to be paid subsequently, and to make the obligation of the company begin when payment is made and subject to the condition of the applicant existing at that time rather than at the date of the policy, and not as one intended to postpone the taking effect of the policy when the premium has already been received and all the terms of the contract agreed upon.

The character of the risk to be assumed in this case was passed upon in accepting the application, and, as the premium had then been paid and accepted, there was nothing to prevent the immediate conclusion of the contract subject to the other condition, that the applicant should be at the date of the policy alive and in good health. Story on Conflict of Laws, sec. 279a; Schwartz v. Insurance Co., 18 Minn., 448. The general rule is that the acceptance of the application and the issuance and mailing of the policy are all the acts that are essential to put the contract in force, and the fact that the policy is sent to an agent for unconditional delivery does not alter the effect of the transaction. Shattuck v. Insurance Co., 4 Cliff. C. C., 598. It does not appear that the agent to whom this policy was sent was to ascertain the condition of Harris' health or that he had any discretion to hold it in any event, and this distinguishes the case from that of Equitable Life Assurance Society v. Pettus, 140 United States, 226, in which the premium was to be collected by the local agent before the policy took effect. That case and others relied on by plaintiff in error are further distinguishable from this upon another ground which will be stated further on.

In Schwartz v. Insurance Company, supra, the policy containing the same provision as that under consideration was sent by the company to its agent in Minnesota for delivery upon payment of first premium while applicant was alive and in good health, and the agent refused to deliver it because the applicant was sick. It was held that if the agent was authorized by instruction to withhold the policy because of such sickness, the contract did not take effect; but that

if it was sent for delivery upon payment of premium with no authority in the agent to retain it because of applicant's condition, the contract became effective upon tender of premium. It necessarily follows that if the premium has been paid when the policy issues, such a provision as this does not hinder its immediate operation.

Since the premium had been paid and all the terms of the contract settled at the home office of the company, we do not think that the clause in question was intended to hold the contract in abeyance until the policy should be actually received by Harris. This view of it is confirmed by the evident implication from the whole transaction that the parties contemplated performance in Pennsylvania. The premiums were to be paid to the company or its agents. There is no stipulation that agents authorized to receive premiums should be kept in Texas. In case none were provided, the premiums must of necessity have been paid at the office of the company. And so as to payment of loss. All the documents essential to entitle the beneficiary to payment were to be presented at Philadelphia, and the intention that the money should be payable there is manifest.

The authorities relied on by plaintiff in error to show that this is a Texas contract are mainly based, as it seems to us, upon a principle not applicable to this case As before noted, a court of one State will not apply to contracts brought before it the laws of another State, when such application is forbidden by the law to which the court owes obedience. In the cases referred to, the transactions were so conducted as to be controlled by statutes in force in the States where the courts passing upon them sat. In the Federal cases, this more clearly appears in the reports of the decisions of the circuit courts than in those of the Supreme Court. Assurance Society v. Pettus, supra; Wall v. Assurance Soc., 32 Fed. Rep., 273; Insurance Co. v. Fletcher, 117 U. S., 519; same case, 13 Fed. Rep., 526; Knights Templar v. Berry, 50 Fed. Rep., 512; Insurance Co. v. Robison, 54 Fed. Rep., 580; Hicks v. Insurance Co., 60 Fed. Rep., 692; Cravens v. N. Y. Life, 50 S. W. Rep., 523. It can not be said that the authorities upon this subject are harmonious, but we think those cited are to be understood as just indicated. There is no statute in Texas which prevents the court from applying the general rules of comity stated at the outset. We therefore hold that the law of Pennsylvania should be followed in determining the validity and construction of this contract; and this embraces the statute and its construction by the courts of that State as well as any other rule shown to be law there in force and applicable, whether fixed by statute or not.

The assignments of error complain of the charge of the court for submitting to the jury the question of the materiality of the representations the falsity of which is relied on to defeat the policy, the contention being that under the law of Pennsylvania, as shown by decisions of the Supreme Court of that State, the question of materiality was one of law, and that the court should have instructed that

those in question are material and avoided the policy. The first questions for the jury to determine were, what ones of the representations were untrue, and the extent to which they were untrue. When this was determined, the question remained, whether or not the untrue portions were material. Unless they were so clearly material that reasonable minds could not differ about it, we think it was proper to submit the question of materiality to the jury. The evidence was such concerning the statements about the past and present health of the applicant and the fact that he signed the application in his own writing, that the court was warranted in leaving to the jury the question whether or not any untruth or inaccuracy they might find to exist in such statements was material to the risk. Not so with regard to the representations concerning previous medical attendance. They were admittedly untrue and were, we think, necessarily and plainly material. Such is the law of Pennsylvania as shown by the decisions referred to. In March v. Insurance Company, 40 Atlantic Reporter, 1100, the Supreme Court of that State thus states the law: "Ordinarily questions of good faith and materiality are for the jury, and where the materiality of a statement to the risk involved is itself of a doubtful character, its determination should be submitted to the jury. But it was never intended by the Act of 1885, nor did that act assume, to change the law in cases where the matter stated was palpably and manifestly material to the risk, or where it was absolutely and visibly false in fact." And further on says: "The Act of 1885 has nothing to do with this question. If these were material questions before that act was passed, they are material still, and must be so pronounced by the court, without reference to the jury. A strong case illustrating the materiality of this class of questions is Aid Society v. O'Hara, 120 Pennsylvania State, 256, 13 Atlantic Reporter, 932. In the opinion delivered by Paxson, J., it is said: 'The eighth interrogatory in the application is: "Have you had any medical attendance within the last year prior to this date? If so, for what disease? Give name and address of the doctor in full." The object of this inquiry is manifest. If the assured had no medical attendance within the time prescribed, and so answers, that is the end of it. But if he had such attendance, then the company is entitled to know for what cause he had medical advice or aid, and the name and address of the doctor, in order that they may ascertain the particulars from him. And, if the assured falsely answer that he had no medical attendance, he is not entitled to recover.' " And further: "In Wall v. Royal Society, 179 Pennsylvania State, 355, 36 Atlantic Reporter, 748, the questions and answers related to the health of the insured, and the attendance of a physician. The judgment was reversed on the ground, substantially, that it was competent to the defendant company to prove the falsity of the answers, without regard to the question whether they were warranties, or only misrepresentations."

In Lutz v. Insurance Company, 40 Atlantic Reporter, 1104, it

appeared that in the application false answers were made to several questions, one of which was, "Have you ever consulted any other physician?" A. "No." And the same court said: "Where it was doubtful whether the matter was material, the question of materiality must be submitted to the jury, but, where the matter involved was palpably and manifestly material to the risk, the law was not changed, either by the Act of 1885, or by any decision before or since. Thus, in the present case, all the questions above enumerated were intrinsically and essentially material to the risk, and have always been so held by all courts of last resort."

It thus appears that by the law of Pennsylvania, statements such as those made in Harris' application concerning previous medical attendance are material to the risk, and when untrue, avoid the policy. This is a rule of substantive law and not merely one of procedure. How it is to be made effectual in the trial of a case, whether by peremptory instruction or by a declaration in the charge that the matter is material, or by setting aside a verdict rendered in disregard of it, is a question of procedure, and we agree with the Court of Civil Appeals that the practice in Pennsylvania, as shown by these decisions, is not materially different from our own. In both States, when the evidence is clear and uncontroverted, it is error to submit the question to the jury and error to allow a verdict thus against the law and evidence to stand. That the representations under discussion were material is sufficiently shown by the quotations from the decisions. See also Bliss on Life Ins.; Cobb v. Mut. Ben. Assn., 26 N. E. Rep., 230; Numrich v. Supreme Lodge, etc., 3 N. Y., Sup., 553. It may be true that an error in statement in an application concerning medical attention might, in some cases, appear to be immaterial, but this can not be held as to those in this case.

Applying to the contract the law most favorable to defendant in error, we must hold the policy was avoided by representations which were both false and material. And, as the facts are undisputed, there is no reason for remanding the case. The judgments of the Court of Civil Appeals and the District Court are reversed, and judgment will be here rendered for plaintiff in error.

*Reversed and rendered.*