AMERICAN HOME LIFE INS. CO. v. MELTON. †

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 13, 1912. Rehearing Denied Feb. 10, 1912.)

1. INSURANCE (§ 136*)—CONTRACT—DELIVERY.
Actual or constructive delivery of an insurance policy is essential to its validity.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 219–230; Dec. Dig. § 136.*]

2. INSURANCE (§ 136*)—CONTRACT—DELIVERY OF POLICY.
Where the application required that a life policy be delivered to and accepted by applicant before becoming effective, the intention of the official who executed the policy that it should become effective as soon as executed would not

make it effective before it was actually delivered and accepted.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 219–230; Dec. Dig. § 136.*]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by Byrdie Melton, as administratrix, against the American Home Life Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed, and judgment rendered for defendant.

C. K. Bell, for appellant. Baskin, Dodge & Baskin and Theodore Mack, for appellee.

DUNKLIN, J. Byrdie Melton, as administratrix of the estate of James T. Melton, deceased, instituted this suit against the American Home Life Insurance Company to recover $5,000, the face value of a certain life insurance policy, and also interest, and the statutory penalties claimed by reason of defendant's failure to pay the policy; and from a judgment in favor of plaintiff for $6,341.80 the defendant has appealed.

The policy was introduced in evidence and contained recitals that the insurance company agreed to pay $5,000 to the estate of James T. Melton "at its home office in Fort Worth, Texas, immediately upon receipt at said home office of due proof of the death of James T. Melton, the insured, while this policy is in force." It was alleged in plaintiff's petition that for a valuable consideration the insurance company executed and delivered the policy to James T. Melton, who complied with all the terms of the insurance contract necessary to render the policy valid and binding upon the company. James T. Melton executed and delivered to W. C. Dugger, Jr., defendant's acting secretary, a written application for the policy, which application contained, among others, the following agreement on the part of the applicant: "I hereby warrant and agree as follows: (1) That, if this application is accepted, the policy issued hereunder shall not take effect until the first premium shall have been paid to and accepted by said company or its authorized agent, and such policy delivered to and accepted by me, and all during my continuance and while I am in good health." Upon receipt of the application, the policy, made the basis of the suit, was duly executed by the president of the company and countersigned by W. P. Dugger, Jr., as acting secretary. The written application therefor was attached to the policy, and the policy contained the following stipulation: "This policy is based upon the written and printed application therefor, a copy of which is hereto attached, and which is made a part of this contract." The policy was kept in the office of the secretary of the company, and was never delivered to Melton. The application for the policy was dated July 6, 1909. The first premium due the company for the policy

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court April 3, 1912.

was never paid. The applicant was in the employment of the company, and his duties required him to travel to different towns in the state. On September 26, 1909, he returned to his home from one of his trips, sick with typhoid fever, and from that illness he died during the month of October following. His wife and W. C. Nance, his brother-in-law, testified that each at Melton's instance, after his return home on September 26th, requested the officers of the company to deliver the policy to Melton, but that their requests were refused. Nance testified, further, that on September 27, 1909, he offered to pay to the defendant the first premium, but that this request was likewise refused on the ground that the policy had lapsed for nonpayment of premium. W. C. Dugger testified that about September 13th he asked the deceased if he intended to take up the policy, and in reply deceased told him to cancel it, as the premiums were too high; that the witness then let the policy run 60 days, and indorsed it, "Canceled." R. T. Stewart, president of the defendant company, testified that it was the custom of the company to extend to agents of the company, such as James T. Melton, credit for the company's share of premiums on all policies procured by such agents for a period of 60 days from the first of the month next succeeding the dates of the policies; the portions of such premiums being termed "nets" and being the balance remaining after deducting therefrom 65 per cent., which was the agent's commissions for procuring applications for the policies. He further testified as follows: "Being asked to state whether it was the intention on the part of myself, as president of the company, that the policy issued on that application should, at the date of issuance, become a contract of insurance between the company and Mr. Melton, I will say that it was my intention, of course, or it would never have been done, but the contract was not to take effect until the examination had been approved. That is always understood. If the examination had been approved, it was to take effect; otherwise it would not. It is my understanding that he passed the examination all right. The policy would not have been issued had he not passed the examination." It was admitted by the defendant that Melton did pass a medical examination the result of which was satisfactory to the officers of the company.

Appellee insists that the evidence of Stewart was sufficient to show that credit for the first premium on the policy was extended by the company for a period of 60 days beginning August 1st and ending October 1st, and that this evidence, in connection with proof of tender of the premium on September 27th, and Stewart's further testimony that he intended that the policy should become effective from the date of its execution, was suf-

ficient to warrant a recovery. This theory of plaintiff's case was embodied in the court's charge to the jury, and was the basis of the verdict in appellee's favor.

[1] It is elementary that delivery, either actual or constructive, of an instrument of writing of the character of this policy is essential to give it legal effect, and the stipulation quoted from the application for the policy in express terms was that the policy should not take effect until it should be actually delivered to and accepted by the applicant.

[2] This was a clear and explicit agreement the effect of which could not be varied by Stewart's intention that the policy should be effective as soon as he executed it. If he had actually tendered the policy, yet, under the terms of the agreement, it would not become a completed contract until accepted by Melton, and there was no evidence to show that he even intended to accept it until after he was fatally ill, and which illness precluded his right then to demand its delivery, according to the terms of his agreement with the company.

For these reasons, plaintiff failed to establish prima facie the cause of action asserted in her petition, and the trial court erred in refusing defendant's requested instruction for a verdict in its favor.

Hence the judgment of the trial court is reversed, and judgment is here rendered in favor of the appellant.