## DENTON v. KANSAS CITY LIFE INS. CO.
### (No. 6317.)

(Court of Civil Appeals of Texas. Austin.
May 11, 1921.)

**1. Insurance ⬅136(2)—Manual delivery of policy unnecessary, where issued and mailed to agent for delivery.**

Manual delivery of an insurance policy is not necessary, where there has been an acceptance of the application and the policy has been issued and mailed to the assured or to an agent of the company for unconditional delivery to the assured.

**2. Insurance ⬅136(4) — Delivery of policy during applicant's good health is condition precedent to liability.**

Stipulations in a life insurance policy that same is to be null and void unless delivered to the insured or his beneficiary during his lifetime and while in good health are valid and binding and conditions precedent to the liability of the insurer.

**3. Insurance ⬅136(4)—Policy delivery not unconditional where agent directed to ascertain applicant's health before delivery.**

Where policy, conditioned on delivery during applicant's good health, was mailed to the company's agent to be delivered only after he had ascertained whether applicant had had any attack of grippe, Spanish influenza, or pneumonia since being examined, and applicant, on the day before the mailing of the policy to the agent, was taken with influenza, developing into pneumonia, of which he died before receipt of the policy by the agent, who then refused to deliver it, there was no issuance and transmission of the policy through the mails for unconditional delivery.

**4. Insurance ⬅136(4) — Where application provided that the policy should be void unless delivered to assured while in good health there was not an unconditional acceptance of the risk.**

Where an application for life insurance itself provided that the policy should be void unless delivered to applicant while in good health, there was no unconditional acceptance of the risk, so that the company was not liable to the applicant's beneficiary upon refusal of its local agent to deliver the policy to her after applicant's death, from a disease contracted after the application was signed.

**5. Insurance ⬅136(4)—Implied delivery by placing in mails held not binding, where insurer had no knowledge of subsequent illness of insured.**

Under a policy conditioned on delivery during applicant's good health, the company is not liable, though there was an implied delivery by placing the policy in the mails addressed to the company's agent for delivery to the insured, where neither the company nor its agents knew of the illness of the insured subsequent to the acceptance of the application.

**6. Insurance ⬅136(4)—Applicant taken with influenza not in "good health" within policy condition of delivery during applicant's good health.**

An applicant for a life insurance policy, who contracted influenza on the day before the policy was placed in the mails, and, before the policy was received, died from pneumonia resulting from influenza, was affected with a serious and dangerous disease, which directly contributed to the immediate cause of his death, and therefore, at the time the policy was placed in the mails, was not in "good health" within a policy condition of delivery during applicant's "good health," for the quoted phrase, although not implying that the applicant is free from slight ailments, means that he is not suffering from any serious or fatal illness or disease.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good Health.]

**7. Appeal and error ⬅854(1)—Court must affirm judgment of lower court if any ground to support it.**

It is the duty of the court to affirm the judgment of the lower court if there be any ground to support it.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**8. Insurance ⬤═651(2)—Letter from company, instructing local agent to ascertain whether insured in good health before delivering policy, held competent.**

In action on a policy conditioned on delivery during applicant's good health, a letter from the general agent of the ·company to its local agent, directing him to ascertain whether the applicant was in good health, and, if not, to report the fact to the company before delivering the policy, was competent upon the issue of the delivery of the policy and the intention of the company in that respect, in view of plaintiff's contention that delivery of the policy to the local agent was delivery to the insured.

Appeal from District Court, Runnels County; J. O. Woodward, Judge.

Action by Lucy Denton, for herself and as survivor in community of the estate of George V. Denton, against the Kansas City Life Insurance Company. Judgment for defendant, and plaintiff appeals. Affirmed.

A. K. Doss, of Ballinger, for appellant.
Dallas Scarborough, of Abilene, for appellee.

### Findings of Fact.

BRADY, J.     Mrs. Lucy Denton, for herself and as survivor in community of the estate of George V. Denton, brought this suit against appellee to recover upon a life insurance policy, alleged to have been issued on the life of her deceased husband. The defenses of the insurance company resolved themselves into the claim that the company was never bound, because there was no delivery of the policy to Mr. Denton, nor to his beneficiary during his lifetime and while in good health. The defenses were based upon certain provisions in the application and policy. It was provided in the application:

"That it is expressly agreed to and understood on my part that this contract is to be null and void and of no binding force whatever, unless my application is received and accepted by the home office of the company, and approved by the medical director, and the policy of insurance is delivered to me or to my beneficiary during my lifetime, and while in good health."

The policy contained a similar provision, as follows:

"That this policy shall not take effect unless the first premium hereon has been paid and this policy delivered to the applicant within thirty days from the date hereof, or unless the applicant is in good health at the time of its delivery."

The court rendered judgment in favor of the insurance company, from which the plaintiff appealed.

The agreed statement of facts was as follows:

"First. On December 4, 1918, George V. Denton, a resident citizen of Runnels county, Tex., made application to the defendant company for a policy of life insurance in the sum of $1,500, payable to his estate; said application as signed by the said ·George V. Denton being hereto attached and marked 'Exhibit A' and made a part of this agreement.

"Second. That on the date of said application, the said Denton made, executed, and delivered to W. E. Branch, local agent at Ballinger, Tex., for the defendant, a note covering the amount of the first year's premium on said policy, the amount of same being $45.10; that W. E. Branch and A. J. Thorp at said time were both local agents for the defendant, at Ballinger, Tex., and acted concurrently in taking said application and accepting said note in payment of said first year's premium.

"Third. That on said 4th day of December, 1918, said George V. Denton submitted himself for physical examination before Dr. J. G. Douglas, practicing physician residing in Ballinger, Tex., the said Douglas being then and there the duly appointed local medical examiner for the defendant company; and the said Denton was on .said date examined by the said Dr. Douglas;. that the report of said· physician on the physical condition of the said George V. Denton at the time of said examination is hereto . attached and marked 'Exhibit B' and made a part of this agreement.

"Fourth. Said application and report of said medical examination were thereupon forwarded to the home office of the defendant company at Kansas City, Mo., and said report of said medical examination thereafter approved by the chief medical examiner for the defendant, and in due course and routine of business a policy of insurance of the kind and character applied for was signed by the defendant in due form on the 2d day of January, 1919, dated said day and date, which said policy was, on the 3d day of January, 1919, duly registered under the laws of Missouri; that immediately thereafter said policy of insurance was transmitted by mail to Texas office and general agent for Texas of the defendant, at Dallas, Tex., to be by him forwarded to the local agents at Ballinger, Tex., that on the 7th day of January, 1919, said policy was forwarded by mail from said Dallas office to the said W. E. Branch at Ballinger, Tex.; that the said Branch was then residing temporarily in Eastland, Tex., and said policy was forwarded from Ballinger to Eastland, with his mail; and thereafter said W. E. Branch, having received said policy at Eastland, Tex., returned same to said A. J. Thorp at Ballinger, for delivery to the insured; that said policy of insurance was received in Ballinger ·by said A. J. Thorp after the death of the insured; that demand was made on said A. J. Thorp by attorneys for said Lucy Denton, plaintiff, for delivery of said policy, and same was refused, the· defendant and its agents retaining possession of said policy, and that same is still in its possession, said policy being hereto attached and marked 'Exhibit C.' That prior to the institution of this suit, payment of the amount represented by said policy was demanded of defendant, and payment refused by defendant; said policy being a part of this agreement.

"Fifth. That on the 2d day of January, 1919, the said George V. Denton was taken sick with

influenza; that some five days later said disease developed pneumonia, and that the said George V. Denton died from pneumonia on the 10th day of January, 1919; that the said George V. Denton was in good health from December 4, 1918, to January 2, 1919.

"Sixth. That on the 22d day of March, 1919, the defendant returned to said Mrs. Lucy Denton said note so given and executed by said George V. Denton; that upon the maturity of said note the said Mrs. Lucy Denton, through her attorney, made a tender to the defendant of the amount of the principal and accrued interest on said note, which was then and there refused by the defendant; that the plaintiff has duly qualified as survivor in community of the estate of George V. Denton, deceased, and as such is entitled to bring this suit; that the policy number of the policy of insurance on which this suit is based is No. 172062."

It was also agreed that the local agent at Ballinger, who took the application of George V. Denton, accepted on the same date the promissory note of Mr. .Denton, in full settlement of the first premium, and that it was understood between the agent and Mr. Denton that the policy when issued should be returned to the agent at a bank in Ballinger, to be delivered to the insured. The policy did not reach the bank until after the death of Mr. Denton, either the 16th or 17th of January, 1919. The policy contained the usual provision that no agent had the power to modify the contract, to waive any forfeiture, to bind the company by making any promise or representation, or to deliver any policy contrary to the provisions heretofore quoted. It was stipulated that these powers could be exercised only by the executive officers of the company.

The physician who examined Mr. Denton testified that he was the local medical examiner of appellee, and that, at the time he made the examination of Mr. Denton, he was the family physician of the applicant. He further testified that Mr. Denton was taken ill with influenza on January 2d, and continued to suffer with this disease until January 8th, when pneumonia developed, from which he died on January 10th. He also stated that Mr. Denton's fatal illness dated from January 8th, and had not pneumonia developed he probably would have survived; further, that Mr. Denton was in good health from the date of his examination up to the 2d day of January, when he took the influenza, a disease commonly known as "flu."

Appellee offered in evidence the following letter:

."Dallas, Texas, January 7, 1919.

"Mr. W. E. Branch, Ranger, Texas—Dear Mr. Branch: The Kansas City Life Insurance Company instructs our agency, before delivering the inclosed policy No. 172062 to the insured, that we personally question the insured and ascertain whether the insured is now in good health, and whether he or she has had an attack of la grippe, Spanish influenza or pneumonia, since being examined for this policy. If you find the insured now to be in good health and has not had any of the above ailments, since being examined, then have he or she to sign the memorandum attached to this policy, and which is made a part thereof. We are further instructed to have this executed by the insured and witnessed by the agent in each case before delivering the policy.

"If the insured has had an attack of any of the above-mentioned ailments, or is now not in good health, then you will please report this fact to our office by first mail and wait further instructions from the company before offering to deliver the policy. Please forward this memorandum to our office after same has been signed by the insured and witnessed by you, along with your report of delivery of contract. We are requested to make this report the day of delivery. Please bear this in mind.

"Yours very truly,

"W. B. Bolding, Mgr. Policy Dept."

## Opinion.

[1] In several forms, appellant presents the proposition that the contract of insurance was fully consummated and a delivery of the policy effected, within the meaning of the application and the policy, when it was issued and placed in the mails for delivery in due course to the insured. It is not claimed that there was manual delivery to the insured, but that a constructive or implied delivery resulted. Among the cases cited to sustain this proposition are Fidelity Mutual Life Ass'n v. Harris, 94 Tex. 25, 57 S. W. 635, 86 Am. St. Rep. 813; Unterharnscheidt v. Mo. State Life Ins. Co., 160 Iowa, 223, 138 N. W. 459, 45 L. R. A. (N. S.) 743. These cases do recognize the rule that manual delivery is not necessary where there has been an acceptance of the application, and the policy has been issued and mailed to the assured, or to an agent for unconditional delivery; and numerous cases are cited in support of the proposition that legal delivery is very frequently accomplished without an actual transfer of manual possession. It will be noted, however, that in each of these, as well as in other cases cited, it is stated that to accomplish such a result the transmission of the policy must be for unconditional delivery. In the Harris Case, it was said by Mr. Justice Williams:

"It does not appear that the agent to whom this policy was sent was to ascertain the condition of Harris' health, or that he had any discretion to hold it in any event; and this distinguishes the case from that of Society v. Pettus, 140 U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497, in which the premium was to be collected by the local agent before the policy took effect."

In the Unterharnscheidt Case, which is strikingly similar to the present case in most of its features, it also appeared that the policy was transmitted to the agent of the company for unconditional delivery, in so far as any of the applicable provisions of the

application were concerned. We shall have occasion to briefly discuss these cases hereafter, in an effort to distinguish them from the instant case.

[2] We have examined numerous authorities bearing upon the question under discussion, and find an apparent conflict which we shall not attempt to reconcile. An instructive note on this subject will be found in 17 L. R. A. (N. S.) 1144, and also in 43 L. R. A. (N. S.) 725.

In the first case note, 17 L. R. A., referring to stipulations of this character, it is stated by the editors:

"It may be said generally that such stipulations are valid and binding, and that there can be no recovery if the policy is delivered to assured while he is in ill health, provided that neither the insurer nor any authorized agent had knowledge thereof; and this is true, by the weight of authority, even if the illness arose before the time of the application and medical examination. This is likewise true if the policy is delivered after death, but in ignorance thereof, or even with knowledge on the part of an agent without authority. Still more is it true if never delivered because of the illness or death of applicant."

In Ruling Case Law, vol. 14, p. 898, it is said:

"The application may provide that the contract shall not be complete until delivery of the policy, in which case delivery is essential, unless delivery is waived, as it may be."

It is generally held that such stipulations are in the nature of conditions precedent to the liability of the insurer. Cyc. vol. 25, p. 719; R. C. L. vol. 14, p. 900; Yount v. Ins. Co. (Mo. App.) 179 S. W. 749; Amr. Home Life Ins. Co. v. Melton, 144 S. W. 362; Neff v. Metropolitan L. Ins. Co., 39 Ind. App. 250, 73 N. E. 1041; Clark v. Mutual Life Ins. Co., 129 Ga. 571, 59 S. E. 283; Schwartz v. Germania Life Ins. Co., 18 Minn. 448 (Gil. 404); Oliver v. Mutual Life Ins. Co., 97 Va. 134, 33 S. E. 536; Metropolitan Life Ins. Co. v. Howle, 62 Ohio St. 204, 56 N. E. 908; also same case on subsequent appeal, 68 Ohio St. 614, 68 N. E. 4. Numerous other authorities might be cited to the same effect, and we understand this rule to be virtually approved by our Supreme Court in Ins. Ass'n v. Harris, supra, in the discussion of the case of Schwartz v. Germania Ins. Co., supra.

[3] Keeping in mind the principles above stated, let us consider whether in this case there was any constructive or implied delivery of the policy. It is an undisputed fact that when the policy was issued, registered and transmitted by mail to the general agents of the company at Dallas, Texas, to be in due course forwarded to the local agent for delivery, it was upon express and positive instructions to personally interview the applicant and to require satisfactory evidence that the insured was in good health before a de-

livery of the policy should be made. The instruction to the agents was specifically to ascertain whether the applicant had any attack of la grippe, Spanish influenza, or pneumonia since being examined for the policy. Further, if it developed that such was the fact, the agents were required to report that fact to the home office by first mail, and to await further instructions from the company before offering to deliver the policy. It thus appears that there was not any issuance ·and transmission of the policy through the mails for unconditional delivery to the applicant. It clearly was not the intention of the company to effect a delivery until satisfied of the good health of the applicant since the date of his examination, and a manual delivery was clearly contemplated, but upon the condition indicated. There is not the slightest evidence that there was any waiver of this condition by the company; nor is there any element of estoppel in the case. It follows, we think, that since the action of the company, in withholding manual delivery until satisfied that applicant was in good health and subject to none of the diseases mentioned, was based upon an express and valid stipulation in the contract; it was a condition· precedent to the liability of the company. The minds of the parties never met, and there was no consummated contract.

[4] It is suggested by appellant's counsel that in this case there had been an application, payment of first year's premium, and unconditional acceptance of the risk with no reservations, and that therefore the insurer could not bind the insured by attempting to impose conditions upon the delivery of the policy not contemplated in the contract, without his consent. The vice in this argument is that it assumes that there was an unconditional acceptance of the application, and an attempt to impose conditions outside its provisions. The facts are to the contrary. The basis, for the action of the company in refusing to consummate the delivery until satisfied as to the applicant's health, was a provision in the application itself. This was a part of the contract. It was an agreement the parties could lawfully make, and should be enforced. To hold otherwise would be for the court to make a contract for the parties. Until the proposal was accepted, without reservation, there was no completion of the contract, and no final consummation of delivery. Yount v. Prudential Life Ins. Co. (Mo. App.) 179 S. W. 749, and authorities there cited.

[5] There is another ground upon which we think it should be held that the trial court properly rendered judgment for appellee. If it should be conceded that a constructive or implied delivery was made by the placing of the policy in the mails, nevertheless it was subject, in the absence of waiver or estoppel, to the condition that the insured should then be in good health. This stipula-

tion was contained in the very proposal for insurance, and was binding upon the applicant and his beneficiary. There is no pretense that the company or its authorized agents knew of the illness of Mr. Denton, which began January 2d, and which, in the course of a few days, developed into pneumonia, which caused his death. Several of the authorities cited above recognize the rule that under such conditions even a manual delivery of the policy would not preclude the company from proving the fact, and thus avoiding liability under the very terms of the application and policy. This rule is expressly recognized by our Supreme Court in the case of Ins. Ass'n v. Harris, supra, and is applicable to the facts of this case. It was there held that:

"If the applicant had then been dead or not in good health, the policy would never have been binding; but, as he was alive, it became effectual at once, if he was also in good health, unless other provisions postponed this conclusion."

[6] It is true that "good health," as used in such connection, does not imply that the applicant is free from slight ailments. It means that he is not suffering from any serious or fatal illness or disease, which is usually a question for the court or jury. Under the agreed facts, it appears that the family physician of applicant was unwilling to testify that he was in good health after January 2d, the day before the policy was placed in the mails. It appears that applicant died directly from pneumonia, but that disease was immediately caused by influenza. It is true that the physician also stated that, in his opinion, the fatal illness dated from January 8th, and that if pneumonia had not developed, applicant would probably have survived. We think, however, the testimony on this point was sufficient to justify a finding by the trial court that applicant was affected with a serious and dangerous disease, which directly contributed to the immediate cause of his death, and therefore he was not in good health at the time even when the policy was placed in the mails for transmission to the agents of the company.

[7] It is our duty to affirm the judgment of the lower court, if there be any ground to support it. In our opinion, the judgment is referable to either or both the grounds of support indicated, and we have concluded that it should be affirmed. .

We will now briefly consider the two cases mainly relied upon by appellant, Fidelity Mutual Life Ass'n v. Harris, supra, and Unterharnscheidt v. Life Ins. Co., supra.

We have already pointed out that in the Harris Case our Supreme Court qualified the doctrine that where the application and policy provide that it shall not take effect until delivery, a manual delivery is not necessary, but a constructive delivery may result, by

recognizing that the transmission to an agent or to the insured must be unconditional before a delivery could be implied. This condition is clearly recognized by the court in discussing the case of Schwartz v. Ins. Co., supra, which was not challenged, but indeed tacitly approved. Furthermore, the questions really decided in the Harris Case were merely whether the law of Texas or of Pennsylvania should control in determining the validity and construction of the contract; and whether, under the undisputed evidence, there was any liability on the part of the insurance company. The holding was that the law of Pennsylvania should control, and that under the facts the company should not be held liable, although there had been in that case an actual delivery to the assured.

As to the Unterharnscheidt Case, it is concededly more difficult of differentiation. The facts are very like those in the instant case, and the insurance company was held liable, notwithstanding there was no actual delivery. A close analysis of this case, however, discloses that, when the policy was mailed and at the date it should have reached the agent by due course of mail, settlement had been made for the first premium, as found by the jury. The court also found that the undisputed evidence showed that the disease from which the insured died did not develop until several days after the policy should have reached the agent. The court found there was nothing to rebut the presumption that the state of health of the applicant, existing at the date of his application, continued at the time the policy was executed and sent to the agent. The holding of the court may be summarized in this paragraph, at page 234 of 160 Iowa, at page 463 of 138 N. W., at page 748 of 45 L. R. A. (N. S.):

"In other words, the applicant had complied with all the requirements of the contract on his part, and was entitled to receive the policy. He was not responsible for the voluntary absence of the agent, and his rights cannot be abridged or lost by the failure of the agent to perform his duty in the premises."

It thus appears that not only had the first premium been paid, but that the applicant was in a state of good health when the policy was transmitted for delivery. In the instant case, while settlement had been made with the company by the giving of a note, there was evidence tending to show that the applicant was not in good health, when the policy was transmitted with instructions not to deliver if the applicant was not in good health.

If we have not successfully distinguished the Unterharnscheidt Case, nevertheless, we think the great weight of authority, as well as reason, supports our conclusion that the policy in this case never became effective and binding on the company.

[8] There only remains to be considered the question of the alleged error in admitting the letter from the general agents of the company to the local agent. The objections urged were that the letter was ex parte, unknown to and not binding on the plaintiff or her husband, self-serving, and tended to change, novate, and modify the written contract of insurance. We do not think that the letter was subject to any of these objections. It was competent upon the issue of the delivery of the policy, and especially the intention of the company in that respect. It was the contention of the appellant that delivery of the policy to the local agent was delivery to the insured, and it was permissible for the company to show what were the instructions to its agents before it finally accepted the proposal and effected a delivery. As against the objections urged, we hold that the letter was admissible and competent testimony.

Finding no reversible error, the judgment will be affirmed.

Affirmed.

JENKINS, J., being disqualified, did not participate in this decision.

⊖⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes