MAGNOLIA COTTON OIL CO. v. CONTINENTAL OIL & COTTON CO.* (No. 8306.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 15, 1916. Rehearing Denied Feb. 19, 1916.)

1. SALES ⬢⟲81—DELIVERY—TIME.

Ordinarily, where delivery is to be made within a certain period, as within a designated month, the seller has until the last day of the month to make delivery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 217–223; Dec. Dig. ⬢⟲81.]

2. SALES ⬢⟲81—DUTY OF BUYER TO FURNISH CARS—PERFORMANCE.

Where the buyer of goods has the right within a designated period to furnish cars or other receptacles for receiving the goods sold, delivery of the receptacles by him to the seller at any time before the expiration of the designated period, at most allowing a reasonable time for loading, is a compliance with the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 217–223; Dec. Dig. ⬢⟲81.]

3. SALES ⬢⟲81—DUTY OF BUYER TO FURNISH CARS.

Where ten tank cars of cotton seed oil were sold for shipment in January, the sale being made subject to the rules of the Cotton Seed Crushers' Association, which obligated the buyer to furnish at the seller's mill empty tank cars for the delivery and shipment of the oil in time for its loading within January, and giving the seller 48 hours to load after delivery of the cars before he could be held in default, the seller had the right to cancel the contract as to five tank cars which did not reach it in time for it to have 2 full working days of 48 hours for loading them within the month of January.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 217–223; Dec. Dig. ⬢⟲81.]

Appeal from District Court, Taylor County; Thomas L. Blauton, Judge.

Action by the Magnolia Cotton Oil Company against John Guitar, doing business as the Continental Oil & Cotton Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Kirby, Scarborough & Davidson, of Abilene, for appellant. Hardwicke & Chambers, of Abilene, for appellee.

BUCK, J. This is a suit by Magnolia Cotton Oil Company against John Guitar, doing business in Abilene under the name of Continental Oil & Cotton Company, for damages alleged to have been sustained by breach of contract for delivery and shipment of cotton seed oil from the defendant's refinery in Abilene.

Plaintiff, in its petition, alleged that the defendant sold to the plaintiff 10 tank cars, or 1,600 barrels of 50 gallons each, of Bleachable Prime Summer Yellow cotton seed oil, at a price of 31½ cents per gallon. It was alleged that the contract was made through W. L. Alderson & Co., brokers, Dallas, Tex.; said contract providing that the shipment was for January, 1915, and further providing, "sale made subject to the rules of the Texas Cotton Seed Crushers' Association." It was further alleged that, in partial compliance with the terms of said contract, defendant had delivered to plaintiff 5 tank cars, but had failed and refused to deliver the other 5, for which damages were sought in the sum of $6,600.

Defendant answered, among other things, that it had not breached said contract, in that, by the terms of the written memorandum of the brokers, which, with the rules of the Cotton Seed Crushers' Association applicable thereto, constituted the entire contract, plaintiff was to furnish at defendant's mill empty tank cars for the delivery and shipment of said oil in time for the loading of the same within the month of January, and that under the terms of the rules of said as-

---

⬢⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

sociation the seller had 48 hours after the delivery of cars before he could be held in default. In the statement of facts the memorandum of contract is set out as follows:

"Contract No. 360.

"Dallas, Texas, October 22, 1914.

"Continental Oil & Cotton Company, Seller.

"Magnolia Cotton Oil Company, Buyer.

"Gentlemen: Per our exchange of telegrams and telephone conversations between Continental Oil & Cotton Company, of Abilene, Texas, and Magnolia Cotton Oil Company, at Houston, Texas, and ourselves, we beg to confirm having this day sold to Magnolia Cotton Oil Company for the account of Continental Oil & Cotton Company ten (10) tank cars (1,600 barrels) Bleachable Prime Summer Yellow cotton seed oil, all at 31½ cents (thirty-one and one-half cents) per gallon, loose f. o. b. Abilene, Texas.

"Shipment, January.

"Tanks to be furnished by buyer-seller's routing.

"Capacity of tanks, 160 barrels each.

"Exchange free to buyer.

"Terms: Weights and quality guaranteed at destination. Sight draft bill lading attached. Sale made subject to the rules of Texas Cotton Seed Crushers' Association.

"Commission to be paid by seller; namely, 10 per cent. per barrel of 50 gallons.

"This contract is made in triplicate, one copy being sent to the buyer, one to the seller, and one retained on file in this office.

"Yours very truly,

"W. L. Alderson & Company,
"As Brokers Only."

And it is further shown that by letter of December 23, 1914, defendant notified plaintiff that it was ready to begin delivery of the oil at any time and could load the entire 10 tank cars on arrival, asking that plaintiff give defendant some of the tanks at the earliest possible moment. By letter dated January 7, 1915, defendant wrote plaintiff as follows:

"We wrote you some time ago asking you to furnish us tanks as soon as possible to move the Alderson contract. The only routing we insist on is to have the tanks come to us over the Texas & Pacific, and if going to Houston, we would like to have them over the Katy or Santa Fé."

[1, 2] Four tanks were forwarded by plaintiff and loaded out and shipped during the first half of January, 1915. One empty tank car was forwarded so that in ordinary course of transportation it should have arrived at Abilene prior to January 28, 1915; but, by reason of delay en route, it did not reach Abilene until January 30th. By reason of the delay occurring by no fault of plaintiff, defendant waived any question arising by reason of its construction of the terms of the contract, and loaded and shipped this tank; so that, it is only as to the other five that any issue is presented. Of these, one tank reached Abilene on January 29, 1915, 9 o'clock a. m., and was placed at defendant's mill between 8 and 11 o'clock a. m. January 30th. Four others arrived at Abilene January 30th, at 3:50 o'clock a. m., and were placed at defendant's mill on the 31st between 4 and 5 o'clock p. m. Defendant did not load or ship any of these five tanks, but on January 29, 1915, notified plaintiff that the time of shipment of said tanks would not admit of their reaching Abilene within contract time, and that therefore defendant had elected to cancel said contract. January 31st was Sunday, and it is admitted in the statement of facts that none of the tanks not filled reached Abilene in time for the defendant to have two full working days, or 48 hours, for loading the same within the month of January. It is further agreed that if the contention of the defendant, to wit, that it should have two full working days before the expiration of the month of January in which to load and ship said tanks, is correct, the judgment of the trial court should be sustained. But, on the other hand, if plaintiff complied with the terms of the contract by delivering the empty tank cars at Abilene at any time before the expiration of January, then a judgment should be rendered for it in an agreed sum. Ordinarily, where delivery is to be made within a certain period, as within a designated month, the seller has until the last day of the month to make delivery. 35 Cyc. 177. And likewise, where the buyer has the right within a designated period to furnish cars or other receptacles for receiving the commodities, which are the subject of the sale, a delivery by him at any time before the expiration of the designated period or, at most allowing a reasonable time for loading, is a compliance with the terms of the contract. So that, the question before us is reduced to the one issue, to wit, whether by the terms of the contract defendant was entitled to the 48 working hours within the month of January in which to load and ship the oil.

[3] We think from the terms of the broker's memorandum, heretofore set out, that the time therein specified, to wit, January, within which the stipulations of said contract should be complied with, should not be extended beyond said month, and, upon demand by the buyer within a period prior to the expiration of the month sufficient for the seller to load and ship the oil within the specified time, the seller was obligated so to do. The term "January" relates to the time of shipment of oil by the seller, and not to the time of forwarding of the cars by the buyer. Rule 22, § 1(d) reads:

"Specified forwarding.—Tank cars shall be forwarded by buyer in such time that under the ordinary course of transportation they shall reach the seller before the expiration of contract time, and seller in all cases shall have up to forty-eight hours after delivery of each tank at destination in which to load and ship."

Section 2 of said rule is as follows:

"It is understood that this entire rule refers to the forwarding of empty tank cars by the buyer, and does not refer to the movement of the oil by the seller."

Rule 23, § 1, reads:

"Specified shipments of oil or soap stock in buyer's tanks shall be made within the time specified in the contract."

Section 2:

"It is understood that for any of the above shipments of oil or soap stock in buyer's tanks, the tank cars shall be forwarded by buyer in such time that under the ordinary course of transportation they shall reach the seller in time to allow him to make delivery as per contract, and seller shall have up to forty-eight hours of delivery of tank or tanks in which to load and ship."

Rule 25, § 1, is as follows:

"Failure on the part of buyer to forward cars in the proper time and give due notice thereof, shall entitle the seller, at his option, to cancel the contract, or to exact demurrage at the rate of two dollars per tank car for every day's delay, or, upon notice, the right to sell the oil for the account of the buyer within forty-eight hours, Sundays and legal holidays not included, through any cotton oil broker in good standing, at the best obtainable price, holding the buyer for losses. Sale to be for earliest obtainable shipment, original buyer to pay demurrage for all delays. But in case of forwarding tanks for specified forwarding (paragraph d, rule 22) when it is shown that the tank cars were forwarded in due time as above specified, and delayed en route, the seller must fill them, charging the buyer two dollars per day per tank car as above specified, and the buyer must accept them under the contract. In case the seller elects to cancel, he must, after he has acquired the right to cancel any contract or part thereof, notify the buyer by wire of his intention to do so, it being understood that the contract is in force until such notice of cancellation has been given by the seller, and that the provisions of this rule apply to the movement of individual tank cars, and delay in regard to any number of tank cars embraced in one contract shall not influence action in regard to such tanks as may have been forwarded in proper time. Failure to give such notice shall operate as a renewal of the contract and shall extend the time of same as many days as seller allows to lapse before giving such notice."

Rule 27, § 1, reads:

"Seller shall in all cases load tank cars within forty-eight hours of arrival at destination. In case the seller does not load the tank cars within forty-eight hours after arrival he shall pay the buyer two dollars for each tank car for every day's delay beyond forty-eight hours. Or if at the expiration of forty-eight hours after the expiration of contract time of shipment, the tank cars have not been loaded, the buyer shall have the right to cancel or purchase the quantity of oil due on contract for account of seller at lowest obtainable price, through any cotton oil broker in good standing, holding the seller for the loss sustained.

"Note: It must be understood that this rule is intended only for the protection of the buyer after his tank cars have arrived at the mill, and in no case shall it be taken to extend the time of delivery under the contract, or to limit or interfere with the measure of damages that may arise under the contract."

We think, under the rules quoted, it was undoubtedly contemplated that the empty tank cars should arrive at the point of loading within such time as to allow the seller 48 working hours for loading and shipping before the expiration of the time specified in the contract. In the case of Farmer v. Thrift, 94 Iowa, 374, 62 N. W. 804, the Supreme Court of Iowa held, in an action by the buyers of cattle to recover a part payment on account of the seller's failure to deliver, where cattle contracted for were "to be weighed up on full feed and shrunk 3 per cent. any time" between certain dates, that the phrase "at any time" was qualified by "on full feed," and that the defendant had the right to put them in that condition before weighing. In this case the plaintiff paid $300 on the purchase price of said cattle and some hogs, and the time of delivery under the contract was between the 1st and 20th of May. On the 17th day of May the plaintiff went to the premises of the defendant and informed him of his readiness to accept the cattle, but the defendant stated that it was just before feeding time in the evening, and that the cattle were not on "full feed," and had not been fed since morning, and he then informed plaintiff that he would feed and water the cattle and put them in a condition to be weighed under the contract, etc. The court held that he had the right so to do, and that his refusal to deliver the cattle to plaintiff upon demand under the circumstances stated did not constitute a breach. In Larimore v. Hornbaker, 21 Ind. 430, the court held that, where the time and place of delivery are fixed by contract, a tender of property to be delivered, to be valid, must be made a reasonable time before sunset on the given day, and must be continued until that time, unless the party who is to receive the property tendered appeared sooner. See, also, Townes v. Oklahoma Mill Co., 85 Ark. 596, 109 S. W. 548.

We fail to find any error in the action of the trial court, and all assignments are overruled, and the judgment is affirmed.