## CUERO COTTON OIL & MFG. CO. v. FEEDERS' SUPPLY CO. (No. 8800.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 23, 1918. Rehearing Denied March 30, 1918.)

1. SALES ⟨key⟩52(5)—MEETING OF MINDS—SUFFICIENCY OF EVIDENCE.

In suit for seller's breach of alleged contract for sale of cotton seed oil products, evidence *held* to support conclusion that there was a meeting of minds creating a valid contract.

2. CORPORATIONS ⟨key⟩503(2)—VENUE—"CAUSE OF ACTION."

In suit in T. county against a corporation domiciled in another county and having no office or representative in T. county, evidence *held* to show that contract was consummated in T. county, so that court properly overruled plea of privilege, although breach did not occur in such county, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subd. 24, providing that suit against a corporation may be maintained in any county in which cause of action or a part thereof arose; "cause of action" consisting of contract and breach.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cause of Action.]

3. SALES ⟨key⟩80 — PLACE OF PAYMENT — "F. O. B."

The term "free on board," or "f. o. b." is one generally understood and recognized by shippers to mean delivery of the goods without charge for drayage or other expenses previous to the loading, and has nothing to do with the fixing of the time or place of payment of the agreed purchase price, and does not bind the purchaser to pay at the place of shipment, but

---

merely binds him to accept the property delivered on board the cars at that point (citing Words and Phrases, Second Series, F. O. B).

4. CONTRACTS ⬤⟳145 — CONSUMMATION — PLACE.

If the communications leading up to the contract are had over the telephone, the contract is deemed to have been made at the place where the offer of one is accepted by the other.

5. CORPORATIONS ⬤⟳503(2)—VENUE.

Since under Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subd. 24, the "cause of action" consists of the contract and the breach, and the contract was made in T. county, the requirement of the subdivision that part of cause of action must have arisen in county where suit is sought to be maintained has been satisfied.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by the Feeders' Supply Company against the Cuero Cotton Oil & Manufacturing Company. Judgment for plaintiff, and defendant appeals. Affirmed.

J. L. Lockett, Jr., of Ft. Worth, and H. W. Wallace, of Cuero, for appellant. Lattimore, Bouldin & Lattimore, of Ft. Worth, for appellee.

BUCK, J. This suit was instituted by appellee, Feeders' Supply Company, against the appellant, Cuero Cotton Oil & Manufacturing Company, in the Forty-Eighth district court of Tarrant county to recover damages alleged to have been sustained by the alleged breach by appellant of an alleged express contract for the sale by appellant and purchase by appellee of certain cotton seed oil mill products. Appellant duly filed its plea of privilege to be sued in De Witt county, its domicile, and subject thereto answered by demurrer and plea, denying the existence of the alleged contract. In its original petition, plaintiff alleged that the contract was made over the telephone, and by its terms "plaintiff purchased from defendant 300 tons of prime screened cracked cake or meal, 200 tons for prompt shipment, which expression is a common one in this sort of business, and means within ten days from date of purchase, and 100 tons to be delivered at any time up to September 15, 1916." Plaintiff admitted in course of trial that none of the exceptions to exclusive venue in the county of the domicile of defendant existed in this cause, except that it was not admitted that the exceptions contained in subdivision 24, article 1830, Vernon's Sayles' Tex. Civ. Statutes, did not exist. This article reads in part as follows:

"Suits against any private corporation, association or joint stock company may be" maintained "in any county in which the cause of action, or a part thereof, arose, or in which such corporation, association or company has an agency or representative, or in which its original office is situated."

From a judgment in favor of plaintiff in the sum of $525, the defendant has appealed.

[1] There are only two assignments presented in appellant's brief. The first attacks the judgment of the court below on the ground that the undisputed evidence fails to show that any contract and agreement was made by the defendant company with the plaintiff company, as alleged by plaintiff, and that the undisputed evidence shows that the minds of the parties did not meet upon an agreement so as to create in law a binding contract. While the evidence was conflicting as to the nature and purport of the conversation between D. G. Dumas, representing the appellee company, a corporation, and Thornton Hamilton, representing appellant company, also a corporation, yet we are of the opinion that, taking the evidence in its strongest probative effect in favor of appellee, which the trial court had a right to do, such evidence is sufficient to sustain the contention that contract was entered into by the parties over the phone. As it will be necessary for us to refer to certain phases of the evidence in our discussion of the second assignment, which evidence in our opinion supports the conclusion reached by the trial court that a contract was made, we will not undertake to discuss at length each assignment separately.

Dumas testified in part as follows:

"I was representing the Feeders' Supply Company during the month of August, 1916, and up to the present time, in the capacity of local manager. In August, 1916, I received from the Cuero Cotton Oil & Manufacturing Company the following letter: 'Cuero, Texas, August 8, 1916, The Feeders' Supply Company, Ft. Worth, Texas—Gentlemen: We offer you, subject to your immediate wire acceptance and prior sales, all or any part of 300 tons of prime screened cracked cake or meal, at your option, for August and first half of September shipment at $28.75 per ton, f. o. b. Cuero, net to us. We guarantee this meal or cake to have 51 per cent. protein and fat combined. This price is strictly in line with the export market. Yours very truly, Cuero Cotton Oil & Mfg. Co., per Thornton Hamilton.' * * * I called Mr. Hamilton over the phone and asked him if he could give me some of the cake he had quoted me, prompt shipment, as I had some orders on my desk, and needed some for prompt shipment, and he told me he could. The first thing when I called him, I asked him if the offer stated in the letter was still open, or if he had sold the stuff, and he said he had not, and when he agreed to give me some on prompt shipment, I told him that I would take the entire amount of 300 tons, as mentioned in his letter, at the price stated in the letter.

"After I told Mr. Hamilton I would take this cake or meal, he said he had sent his analysis to the chemist, but had not received a report from it; that during the years previous he had made some shipments as prime that did not grade up to prime and that he came near to getting into trouble about it, and that he did not want to get into trouble this time; if he was not making prime, he did not want to ship it as prime, and I told him that I did not want it unless prime, and that I would give him the privilege of canceling, provided his analysis showed that he was making a lower grade than prime meal or cake. I asked him when he expected to receive his analysis and he says, 'To-morrow or not later than the day following.' I then told him that I would give him until the

day following, which would be the 11th, and if he found he was making a lower grade than prime to wire me; otherwise I would consider the purchase made. I did not receive any wire from Mr. Hamilton in regard to the matter, nor any information from him as to whether his cake or meal was prime or better, until it must have been the 12th of August, that I received a letter from him, after I had wired him on the 11th; I then received a letter from him in which he stated that the cake was prime or better. I never received any wire from Mr. Hamilton to the effect he was not making prime cake.

"After I had this conversation over the phone with Mr. Hamilton, I waited until the 11th, which was the time limit which I had given him to hear from his analysis, and then, not hearing anything from him to the contrary, I wired him in orders for three cars, for prompt shipment, concerning which I had phoned him. * * * In reply to this telegram I received a telegram from the Cuero Mills, in which he said he had no contract. It is my recollection I received that wire on the 12th. I never received any of this cake or meal which I purchased from the Cuero Oil & Manufacturing Company. I made a further demand on the Cuero Cotton Oil & Manufacturing Company for this shipment, after my telegram above referred to. * * * In this conversation over the phone, Mr. Hamilton told me he could let me have as much as 150 or 200 tons of prompt, and I told him I did not need that amount. The balance of the cake was to be shipped the last half of August or the first of September, at $28.75 per ton."

[2, 3] It is undisputed that appellant had no office, agent, or representative in Tarrant county at the time of this contract or at the time of the filing of the suit. If plaintiff below was entitled to maintain this suit in Tarrant county it must be on the theory that the offer made by appellant in its letter of August 8, 1916, was accepted by appellee without change on its part of the terms contained in the letter, or that a different proposition was made over the phone by appellant's agent and accepted by appellee's agent at Ft. Worth. It will be remembered that this letter offered the cake or meal for shipment "for August and first half of September shipment $28.75 per ton, f. o. b. Cuero, net to us." The term "free on board," or "f. o. b.," is one generally understood and recognized by shippers to mean delivery of the goods without charge for drayage or other expenses previous to the loading, and has nothing to do with the fixing of the time or place of payment of the agreed purchase price and does not bind the purchaser to pay at the place of shipment, but merely binds him to accept the property delivered on board the cars at that point. Russell & Co. v. Heitmann & Co., 86 S. W. 75, and other cases cited in 2 Words & Phrases, p. 658 et seq. The term thus used did not imply that the shipper should pay the freight, or that it should deliver the shipment at any point in Tarrant county. In fact, the appellee's direction for shipment, as contained in his telegram of 8—11—1916, was that one car was to be shipped to Topeka, and one to Terra Cotta, Kan., and a third to Big Spring, Tex.

203 S.W.—6

While jurists have found some difficulty in defining the term "cause of action," yet in construing the expression in the subdivision of the statute upon which the claim of venue in Tarrant county is based it has been held that a "cause of action" is made up of the contract and its breach. Railway v. Hill, 63 Tex. 381, 51 Am. Rep. 642; Iron Works v. Reeves & Co., 43 Tex. Civ. App. 254, 95 S. W. 739. The breach of the contract did not take place in Tarrant county, because the breach, if any, arose upon the failure to deliver f. o. b. cars at Cuero within the time specified.

[4] If the communications leading up to the contract are had over the telephone, the contract is deemed to have been made at the place where the offer of one is accepted by the other. 1 Elliott on Contracts, § 62, p. 92; Bank of Yolo v. Sperry Flour Co., 141 Cal. 314, 74 Pac. 855, 65 L. R. A. 90. This holding follows the general rule that a contract is made where the acceptance of the offer is given. Insurance Co. v. Harris, 94 Tex. 25, 57 S. W. 635, 86 Am. St. Rep. 813; 1 Elliott on Contracts, § 62, p. 91. The issue then presents itself for our consideration, Did Dumas, for the appellee, accept, without change or qualification, the offer made in the letter of August 8th? According to this letter the Cuero Mill would have had the right to ship the cake or meal at any time during the remaining days of August and the first half of September. In order to constitute the acceptance, appellee must have agreed to accept shipment "for August and first half of September." Dumas, for appellee, testified:

"In my conversation with Mr. Hamilton, in the first place, he told me he could let me have as much as 150 or 200 tons of prompt if I wanted it, and I told him that I had these orders or inquiries that I had to fill with 'prompt,' and that is the reason I called him over the phone, was to see if he could give me some prompt with which to fill these orders."

As was said in the case of Washington v. Rosario Min. & Mill. Co., 28 Tex. Civ. App. 430, 67 S. W. 459:

"The rule is unvarying, and the authorities uniform, that in order to constitute an acceptance of an option, or an offer to sell, the acceptance must be unconditional. There must be no new terms imposed, and no departure from those offered."

Ordinarily, where a delivery is to be made within a certain period, say within a designated month, the seller has until the last day of the named period to make delivery. 35 Cyc. 177; Magnolia Cotton Oil Co. v. Continental Oil & Cotton Co., 183 S. W. 10. Therefore, if Dumas, over the phone, stipulated that in order for him to accept the offer contained in the letter he must have a part of the 300 tons as a "prompt" shipment, such stipulation constituted a counter offer on his part to pay the price required by appellant, if a part of the shipment could be made "prompt." The agreement on the part of Hamilton, acting for appellant, to this

change would consummate the contract, and this agreement or acceptance having been made at Cuero, the venue would properly be in De Witt county, even under the rule that a contract over the telephone is consummated in the county where the acceptance is given. Bank of Yolo v. Sperry Flour Co., supra. But the evidence justifies a conclusion sustaining the judgment of the trial court that Dumas, upon calling up Hamilton at Cuero, first asked him if he could ship a part of the 300 tons as "prompt," and that Hamilton replied that he could, 150 to 200 tons; that thereupon Dumas agreed to take the 300 tons at the price made in the letter of August 8th. The testimony of Dumas heretofore quoted in this opinion, as well as other portions of his testimony of like import, would justify that conclusion. Dumas testified:

"The terms of the purchase which I made over the phone, in my conversation with Mr. Hamilton, were in accordance with a letter I had received from the Cuero Mill. '$28.75, f. o. b. Cuero; shipment the last half of August or the first half of September.' I cannot give the conversation verbatim, but I have stated the substance of it; it was in accordance with the terms specified in the letter, with the added agreement that he was to let me have some of the cake for 'prompt' shipment; I had some orders on my desk which called for prompt shipment. But with that exception the contract over the phone was in accordance with the letter from the Cuero Cotton Oil & Manufacturing Company. * * *"

[5] The contract was made by the acceptance of the offer. If there was an offer on the part of Hamilton, acting for appellant, to ship a part of the 300 tons in accordance with Dumas' expressed wishes and need, and Dumas then accepted this changed offer, and such acceptance consummated the contract sued on, it would seem that the judgment of the trial court must be sustained. Since the cause of action consists of the contract and its breach and the contract was made in Tarrant county, it would appear that the statutory requirement that at least a part of the cause of action must have arisen in the county where suit is sought to be maintained, has been satisfied.

Appellee urges that at the time of the phone conversation between Dumas and Hamilton Dumas merely inquired as to whether, under the offer as made by appellant in the letter, a sufficient shipment of "prompt" would be allowed to fill the orders that appellee then had on hand. And that an inquiry does not constitute a counter offer. Appellee cites Stevenson v. McLean, 6 Eng. Rul. Cas. 82, 49 L. J. Q. B. N. S. 701. This case is cited in 9 Cyc. in a footnote on page 269. The text of the Cyc. there uses the following language:

"If an offer is accepted as made, the acceptance is not conditional and does not vary from the offer, because of inquiries whether the offerer will change his terms, or as to future acts, or the expression of a hope or suggestion," etc.

But even if the judgment cannot be sustained on this theory, we are of the opinion that it should be sustained on the ground that the contract was consummated by the acceptance of Dumas given in Tarrant county. It is true that no right of action arose until the breach had occurred, and that the alleged breach occurred in De Witt county, arising by reason of the failure of the defendant company to load f. o. b. the shipment of three cars ordered by plaintiff. "The right of action springs from the cause of action, but does not accrue until all of the facts which constitute the cause have occurred." 1 C. J. p. 946, and the authorities cited under footnote 38; 1 Bouvier's Dict. 436. That the defendant may not by his own wrongful breach determine the venue of a cause of action arising under a contract consummated in a county other than that of defendant's domicile is decided in Peach River Lumber Co. v. Ayers (writ of error denied) 41 Tex. Civ. App. 334, 91 S. W. 387, cited in 40 Cyc. p. 84. See Harvey v. Parkersburg Ins. Co., 37 W. Va. 272, 16 S. E. 580.

In discussing the meaning of the term "arose" or "arises" used in connection with the expressions "the cause of action arose," or the "cause of action arises," the Supreme Court of Oklahoma, in Doughty v. Funk, 15 Okl. 643, 84 Pac. 484, 4 L. R. A. (N. S.) 1029, says:

"We cannot, therefore, in determining the meaning of the phrase under consideration, hold that a cause of action has arisen only when the remedy and the right occur at the same time. But we do hold that a cause of action arises when the obligation was created which gave rise to a right of action as soon as such right accrued thereon."

The question of venue here involved is not one entirely without difficulty, but we have concluded that under the authorities cited the trial court properly overruled defendant's plea of privilege. All assignments are overruled, and the judgment is affirmed.

Affirmed.