## COWDIN GROCERY CO. v. EARLY-FOSTER CO. (No. 6400.)

(Court of Civil Appeals of Texas. Austin. Nov. 30, 1921. Rehearing Denied Feb. 15, 1922.)

1. Venue ⊜7—Contract held not to provide for performance by seller in county in which buyer had place of business.

Where seller, to which sugar was being shipped under bill of lading designating place in which seller did business as destination, on sale thereof while the sugar was in transit under contract entitling buyer to divert the shipment to a point outside the state, and where neither the invoice made out by seller and attached to the draft for price sent to city in which buyer had its place of business, nor the bill of lading attached to the draft, show that the sugar was to be delivered in such city, the contract did not provide for performance by seller in such city under Rev. St. art. 1830, subd. 5, authorizing suit to be brought in any county in which a defendant has contracted in writing to perform the obligation.

2. Venue ⊜7—Contract made in county in which offer was accepted.

Where sales contract was made by seller's acceptance over the long distance telephone in county in which it had its place of business, of offer made by buyer in other county, in which buyer had its place of business, the contract was made in the county in which the seller had its place of business, and the cause of action and buyer's action against the seller arose therein, and not in the county of the buyer's place of business, within Rev. St. art. 1830, subd. 24, providing that suits against a private corporation may be commenced in any county in which the cause of action, or any part thereof, arose.

Appeal from District Court, McLennan County; E. J. Clark, Judge.

Action by the Early-Foster Company against the Cowdin Grocery Company. From an order overruling defendant's plea of privilege, the defendant appeals. Reversed and remanded.

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

L. D. Brown, of La Grange, for appellant.
Sanford & Harris, of Waco, for appellee.

KEY, C. J. The plaintiff, Early-Foster
Company, a private corporation, brought this
suit against the defendant, Cowdin Grocery
Company, another private corporation, and
this appeal is prosecuted from an order of
the trial court overruling a plea of privilege
urged by the defendant, and the correctness
of that ruling is the only question to be de-
cided by this court.

No objection is made to the form of the
plea of privilege, which, in substance, was
based upon the fact that the defendant has
its domicile and only place of business in
Fayette county, Tex., and that the suit was
brought in McLennan county. The plea al-
leged that none of the exceptions to exclusive
venue in the county of one's residence, speci-
fied in articles 1830 and 2008 of the Revised
Statutes, exist, and in all other respects
it complied with the statute.

The plaintiff filed a controverting plea,
alleging that the contract, for a breach of
which this suit was brought, was in writing,
and to be performed in McLennan county,
and that the defendant was a private corpora-
tion, and that the plaintiff's cause of action,
or a part thereof, arose in the latter county.

After hearing the testimony in reference
to the plea of privilege, the trial court over-
ruled it, and refused to transfer the case to
Fayette county, as requested by the defend-
ant; and that ruling is the only question
presented for decision.

Our venue statute declares that no person
who is an inhabitant of this state shall be
sued out of the county in which he has his
domicile, except in cases thereafter enumer-
ated. That enumeration included 30 classes
of cases when the Revised Statutes of 1911
were adopted, and others may have since
been added. Only two of these exceptions
have any application to this case, and they
are the fifth and twenty-fourth. The fifth
authorizes suit to be brought in any county
in which the defendant has contracted, in
writing, to perform an obligation, and the
twenty-fourth stipulates that suits against a
private corporation, association, or joint-
stock company may be commenced in any
county in which the cause of action, or a
part thereof, arose.

The material testimony heard by the trial
court was that given by the witness J. M.
Cadwell, and certain documentary evidence.
Mr. Cadwell testified:

'I am the manager of the Cowdin Grocery
Company, a corporation of Fayette county,
Tex., with its principal place of business at
Flatonia, Tex. I had a conversation with the
Early-Foster Company concerning a car of
sugar purchased by us from Hale & Co., San
Francisco. That conversation came about
through us having received circular letters
and quotations from the Early-Foster Com-
pany that attracted our attention to them as

dealers in sugar, and having had other inter-
course with them in other matters, and having
this sugar for sale, so I approached the Early-
Foster Company with a view of entering into
a contract for the sale of this sugar. The man-
ner in which I approached them was, I sent
sent them a telegram offering it to them at
23½ cents per pound, f. o. b. San Francisco,
plus $100. However, that proposition was not
accepted. After that offer was made I called
up, and had a telephone conversation with
them. I was speaking to Mr. W. M. Foster.
When I called, I called for the Early-Foster
Company, and for some one in charge, so Mr.
Foster answered. I understood that Mr. Fos-
ter's connection with the Early-Foster Com-
pany was that of owner. This Early-Foster
Company is a corporation. In that telephone
conversation with Mr. Foster, relative to this
car of sugar, I offered him the car of sugar at
23½ cents a pound, f. o. b. San Francisco, and
he declined the offer, but offered to pay 21½
cents a pound, f. o. b. San Francisco, the sugar
being in transit. Relative to what I did in
regard to that offer, I will say that I accepted
it, by spoken communication over the phone,
and not in writing. I accepted it immediately.
In reference to the delivery of the car of
sugar, I agreed to send the bill of lading to the
Early-Foster Company, attached to the draft,
mailing it, or delivering it to the bank that
evening—the Flatonia State Bank, at Flatonia
—so that it would reach Waco, the bank which
Mr. Foster asked me to have the draft sent to,
as quickly as possible, so that he could divert
the car in transit. I told him that we could
probably stop the car at Sweetwater, and that
I had tried to do so, and that I had asked the
agent of the S. A. & A. P. at Flatonia to have
it stopped at that place, for diversion, and, fur-
thermore, I told Mr. Foster that I would take
the matter up with the Santa Fé officers at
Galveston.

"With reference to the payment, the terms
agreed upon were the draft I was to draw on
them was to be paid, and the terms were net
cash. I had an understanding with Mr. Foster
as to how the draft was to be drawn. It was
to be drawn on the Early-Foster Company,
with the bill of lading attached. I executed
that agreement with reference to the drawing
of the draft. I will state that that closed my
conversation with Mr. Foster over the tele-
phone.

"After the telephone conversation, I drew
that draft that has been introduced in evidence
here, and I made out this paper which is now
shown to me, which has also been introduced,
in the nature of an invoice. I also wrote the
letter now shown to me, dated June 17, 1920,
confirming the sale, and the invoice and letter
were mailed by me to the Early-Foster Com-
pany. The draft was delivered to the Flatonia
State Bank, as a cash item, I presume. I
wrote the draft and deposited it at the bank
to my credit. I gave the bank instructions to
collect the draft. The bill of lading was at-
tached to the draft. That bill of lading attached
to this draft was shipper's order, which came
attached to the draft which we paid, the con-
signor being Hale & Co., San Francisco. The
point of origin was San Francisco, and the
destination was Flatonia, Tex. I don't re-
member how the bill of lading was indorsed, or

whether there were any indorsements on it. It would be necessary for the consignor to indorse the bill of lading, but I couldn't answer as to whether or not it was so indorsed."

The plaintiff introduced in evidence the following documents:

"Flatonia, Texas, June 17, 1920.

"Early-Foster Co., Waco, Texas—Gentlemen: We confirm sale to you today of 264 bags, 59847 pounds Java white sugar at $21.50 per cwt. f. o. b. San Francisco, invoice for which is hereto attached.

"Although the transaction shows us a loss, we thank you for the business, and trust we may have the pleasure of future business, mutually profitable.

　　　　"Yours truly, Cowdin Grocery Company,
　　　　　　　　"By [Signed] J. M. Cadwell."

"Cowdin Grocery Company, Wholesale Grocers.
　　　　　　"Flatonia, Texas, June 17, 1920.

"Sold to Early-Foster Co., Waco Texas.

"Terms: Net cash, demand draft. Interest at 8 per cent. charged on invoices after maturity.

"264 Bags Java White Sugar—59847 # @ 21.50 cwt. $12,867.11. Duty paid. Gross weight f. o. b. San Francisco.

"Shipped in car AT&SF 23227.

"Routed Santa Fé, from San Francisco, Cal. 6/9/20.

"Demand draft with bill of lading attached sent to Central National Bank, Waco, Texas, for $12,867.11."

　　　　"Flatonia State Bank 88–761. No.
　　　　　　"Flatonia, Texas, June 17, 1920.

"On demand pay to the order of
Flatonia State Bank.......... $12,867.11
　　　　　　　　　　　　　　　　　　　19.38
Twelve thousand eight hundred sixty-seven and 11/100 dollars, with exchange, value received, and charge to account of

　　　　　　　"Cowdin Grocery Co.,
　　　　　　　　"By J. M. Cadwell.

"To Early-Foster Co., Waco, Texas.

"Note.—Said draft, Exhibit No. 3, has printed across the left-hand end the following words: 'Customer's Draft,' and bears the following stamp marks on the face thereof: 'Paid June 18, 1920. Central National Bank, Waco, Texas,' and 'Collection No. ——— presented mailed not to be telephoned Central National Bank, Waco, Tex.,' and bears the following stamp mark on the back thereof: 'Pay to the order of any bank, banker, or Trust Co. June 17, 1920. Previous indorsements guaranteed. The Flatonia State Bank, Flatonia, Texas.'"

It was agreed in open court, by both parties, that the shipment was delivered on bill of lading to Early-Foster Company at Sweetwater, and by them diverted to Memphis, where the shipment terminated, and was afterwards reconsigned to Waco, Tex., under the same billing. Some freight bills were also introduced in evidence, which we deem it unnecessary to set out here.

[1] We think the trial court erred in holding that the foregoing testimony authorized the plaintiff to maintain the suit in McLennan county. It fails to show a written contract by which the defendant obligated itself to perform in that county, and therefore it does not come within the fifth subdivision of the statute authorizing a defendant to be sued out of the county of his domicile.

The confirmatory letter from the plaintiff to the defendant does not disclose any promise by the defendant to perform any part of the contract in McLennan county, even though it should be conceded that proof of the fact that the letter was written and posted at Flatonia would constitute sufficient proof to hold that the plaintiff was bound by the same as a written contract, which we do not hold. Nor does the proof show that the cause of action arose, in whole or in part, in McLennan county. Upon that point counsel for appellee contend that this case is similar to Dallas Waste Mills Co. v. Early-Foster Co., 218 S. W. 515, decided by this court. We do not agree with that contention. It is true that, in the case referred to, this court held that the contract for the breach of which the plaintiff sued constituted, in part, the plaintiff's cause of action, and that the defendant, being a private corporation, could be sued in McLennan county, because the contract was made in that county. It is also true that in that case the contract was made by telephone, but the testimony showed that the defendant's agent called the plaintiff on the telephone in Waco, McLennan county, and submitted to the plaintiff an offer to sell, which the plaintiff, by telephone, accepted; and this court followed the general rule that a contract is made where it is finally consummated, and that the unconditional acceptance of an offer constitutes the completion and consummation of a contract; and, among other things, this court said:

"The original contract in this case was made by telephone. The defendant, through its agent, the brokers, made an offer to the plaintiff at its place of business, in Waco, McLennan county, and the plaintiff accepted that offer at that place; and the same may be said in reference to the written contract. A contract is made where the acceptance of an offer is given. Ins. Co. v. Harris, 94 Tex. 25, 57 S. W. 635, 86 Am. St. Rep. 813; Cuero Cotton Oil Mfg. Co. v. Feeders' Supply Co., 203 S. W. 79, and authorities there cited. So it follows that the contract involved in this case was made in McLennan county, where the suit was brought."

[2] In the case at bar the only testimony disclosing how the contract was made was that given by appellant's manager, J. M. Cadwell, who testified that he called up Early-Foster & Company on the telephone, and had a conversation with Mr. Foster, and offered him the car of sugar at 23½ cents a pound, f. o. b. San Francisco, and he declined the offer, but offered to pay 21½ cents a pound, f. o. b. San Francisco, the sugar being in transit, and that he (the witness) immediately accepted that offer over the phone. If

Mr. Foster had accepted the offer made to him by Mr. Cadwell, the contract would have been consummated, and treated in law as made in Waco, where Mr. Foster was. But, when Mr. Foster declined that offer, and made to Mr. Cadwell a separate and different offer, the immediate acceptance of that offer by Mr. Cadwell was the consummation and completion of the only contract made, and, as that acceptance occurred at Flatonia, in Fayette county, according to the authorities referred to, and others which might be cited, we feel constrained to hold that the contract was not made in McLennan county, and therefore no part of the plaintiff's cause of action arose in that county.

Counsel for appellee also cite the case of Gottlieb v. Dismukes, 230 S. W. 792, decided by this court, but which is not believed to be analogous to this case. In that case it was held that, where a defendant in G. county telephoned an offer to sell corn f. o. b. there to plaintiff in W. county, weight statements, bill of lading, and demand draft to be sent to W. county for delivery to and payment by plaintiff, and the offer was accepted, with agreement to send confirmatory contract, which was sent accordingly, embodying the terms of the agreement, and was retained by the defendant without objection, the contract was in writing within the purview of the venue statute. But it was further held that the venue statute does not contemplate that the party bringing the suit on the contract in writing may rely on the terms of the contract as to performance by himself, but the venue depends on whether the adverse party has agreed to perform in the county of the suit. In this case there was no agreement between the parties that the verbal contract should be reduced to writing, and the confirmatory letter written by the defendant to the plaintiff does not disclose any obligation upon the part of the defendant to perform any part of the contract in McLennan county.

For the reasons stated, our conclusion is that the trial court erred in overruling the plea of privilege, but should have sustained that plea and transferred the case to Fayette county; and, on account of that error, the judgment is reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

This motion has received careful consideration, and our conclusion is that it should be overruled.

Seley v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399; Callender, Holder & Co. v. Short, 34 Tex. Civ. App. 364, 78 S. W. 367; Yett v. Green, 39 Tex. Civ. App. 184, 86 S. W. 787; Harris v. Salvato, 175 S. W. 802; and Watson v. Landa Cotton Oil Co., 228 S. W. 243—cited and relied upon by appellee,

are not believed to be in point. In the first case cited, which is the leading case upon that subject, the bill of lading, issued by the carrier and accepted by the shipper, showed that the property was consigned to a place in the county in which the suit was brought, and for that reason it was held that the shipper, as well as the carrier, has obligated himself to perform in that county. The other cases cited are similar to that case, and rest upon the same reasons.

In the case at bar the shipment was made from San Francisco, Cal., to Flatonia, Tex. The property was in transit at the time the contract of sale between appellant and appellee was made, and the shipment was, in effect, delivered to Early-Foster Company at Sweetwater, Tex. In other words, by an arrangement between the interested parties, Early-Foster Company was permitted to divert the shipment to a point outside of the state. But failing to dispose of it at that place, Early-Foster Company, on its own motion, caused it to be shipped to Waco, Tex. Neither the invoice made out by Cowdin Grocery Company and attached to the draft, which was caused to be sent to Waco, Tex., nor the bill of lading attached to that draft showed that the property sold and bought was to be delivered in Waco, Tex. The bill of lading designated Flatonia, Texas, as the destination of the property. These facts distinguish the case from those relied on in the motion for rehearing.

On the other point decided in our original opinion, we refer to 13 Corpus Juris, p. 582, and quote therefrom as follows:

"Where a contract is made by telephone, it is regarded as made at the place from which the accepting party speaks. The fact that letters confirming the acceptance are mailed will not cause the contract to be regarded as having been made at the place whence such letters are mailed."

The motion is overruled.
Motion overruled.