### TEXAS FARM BUREAU COTTON ASS'N v. LENNOX et al. (No. 2818.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 15, 1924. Rehearing Denied Jan. 24, 1924.)

1. Venue ⬤�248;7—Situs of contract held in county where original agreement signed.

Where a contract signed in Red River county was a part of the organic agreement of a cotton marketing association, domiciled and doing business in Dallas county, gave the board of directors of the association to be formed the option of proceeding under the contract fully set out in the original articles of agreement signed by the members, or to have each of the members execute another agreement substantially the same, and the board, instead of executing a new agreement in Dallas county, adopted and ratified the original agreement, the venue of an action thereon will lie in Red River county.

2. Venue ⬤�248;7—County in which contract closed is county of venue.

Where a cotton raiser, residing in Red River county, went to Dallas county, and there conferred with a marketing association relative to the terms of a marketing contract, and without making a binding contract returned to Red River county to confer with his brother, and after such conference called the association by long distance telephone and closed the contract, the agreement was made in Red River county for purposes of venue.

Appeal from District Court, Red River County; Ben H. Denton, Judge.

⬤⟸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by H. H. Lennox and another against the Texas Farm Bureau Cotton Association. From an order overruling defendant's plea of privilege to be sued in the county of its residence, defendant appeals. Affirmed.

Long & Wortham, of Paris, C. K. Bullard, of Dallas, Aaron Sapiro, of San Francisco, Cal., and Birkhead & Lang and F. Stevens, all of San Antonio, for appellant.

Lennox & Lennox, of Clarksville, for appellees.

HODGES, J. In October, 1921, the appellees, H. H. and C. D. Lennox, filed this suit against the Texas Farm Bureau Cotton Association, a private corporation organized under the laws of Texas, with its domicile and place of business at Dallas, in Dallas county, Tex. The plaintiffs in their original petition allege, in substance, that on or about June 30, 1921, they as joint tenants in the name of Lennox & Lennox signed a written agreement to organize a nonprofit association without capital, under the laws of the state of Texas, for the purpose of promoting, fostering, and encouraging the business of producing and marketing cotton co-operatively. Among other things, it was agreed:

"(1) That they would become members of the Texas Farm Bureau Cotton Growers Co-operative Marketing Association, a nonprofit association without capital stock to be organized under the laws of the state of Texas.

"(2) All officers and employees of the association who handle funds to be adequately bonded.

"(3) Every member to pay an entrance, or organization fee of $10, except members of the Texas Farm Bureau Fraternity.

"(4) The association to confine itself to the problems and marketing of cotton and cotton products only, and for its members only.

"(5) The association to be organized by the Texas Farm Bureau Federation acting by and through an organization committee, which was therein named."

Other averments referred to the number of signatures of cotton growers required to make a membership sufficient to complete the organization, after which incorporation was to take place. It was further alleged that the subscriber to this agreement was to execute, when requested by the association, a marketing contract in terms substantially as set forth in the agreement signed, or at the option of the board of directors to be bound by a marketing agreement, the terms of which were set out. It was also provided that for such purposes the signatures to the association contract should be deemed to all effects the same as signatures to the marketing agreement and as an acceptance of each and every agreement therein stated as of the date of the exercise of such option by the board of directors. It was further stipulated that notice of the exercise of such option by the board of directors should be mailed to each subscriber, etc. Then follows a copy of the marketing contract referred to above. After the required number of signatures was secured upon satisfactory conditions, the appellant corporation was organized. Soon after its incorporation, its board of directors assembled at Dallas and confirmed the marketing contract herein above referred to and adopted it as the contract with its members for handling and marketing their cotton. Notice, however, was never communicated to the plaintiffs as required in a subdivision of the agreement, but they continued as members of the organization.

The marketing agreement above referred to prescribed the terms and conditions on which the cotton produced by the members was to be handled and sold. It stipulated, in substance, that after the prospective corporation, which is the appellant in this instance, had been organized, its board of directors should have the option to treat the contract embraced in the agreement circulated by the promoters of the corporation as the marketing contract under which it would operate, or it would require the subscribers to execute another contract in substantially the same form. The plaintiffs further alleged that their signatures to this entire agreement were secured by fraudulent representations as to the manner and terms on which the cotton of members would be handled; that the substance of the agreement had been violated by the company. They ask that the marketing agreement be canceled as to them, and that they be relieved from further compliance with its terms and obligations.

For another and distinct cause of action the plaintiffs allege that in January, 1922, they were the owners of 1,095 bales of cotton, most of which was grown under conditions which did not bring it within the provisions of the marketing contract above described. This lot of cotton was delivered to the appellant for sale under a special parol contract, the terms of which are set out in the plaintiffs' petition. They charge a breach of that contract by the appellant, which, they assert, resulted in a loss to them of $39,248.-57. They ask for judgment for that sum in damages.

The appellant filed its plea of privilege, claiming the right to be sued in Dallas county, the place of its residence. The appellees replied to that plea, alleging that the appellant had an agency in Red River county; that in securing their signatures to the written marketing contract a fraud was perpetrated upon them in Red River county; and that both the written and the oral contracts upon which this suit is based were made in Red River county. Upon those issues of fact the trial court found that no fraud had been perpetrated, but that the appellant had an agency in Red River county. He also concluded that both the marketing contract which the appellees here seek to have canceled, and

the parol agreement which they claim had been breached, were made in Red River county. Upon those findings he overruled the plea of privilege, and from that order this appeal is prosecuted.

[1] Practically the only issue presented in the assignments of error is the sufficiency of the evidence to support the findings of fact made by the trial judge. We are inclined to think that the testimony relied on to show that appellant had a local agency in Red River county is too unsatisfactory to sustain the conclusion of the trial court upon that issue. But that error does not require a reversal of the judgment if the evidence was sufficient to sustain the remaining conclusions of fact. It will be observed that the appellees have joined in this suit two separate and distinct causes of action; one to rescind and annul the written marketing contract embraced in the organic agreement, and the other to recover damages for the breach of a subsequent parol contract whereby the appellant undertook to market 1,095 bales of cotton. If the evidence shows that both of these contracts were made in Red River county, the appellees had the right to bring their suit in that county. Commission Co. v. Hart (Tex. Sup.) 20 S. W. 131; Ry. Co. v. Hill, 63 Tex. 383, 51 Am. Rep. 642; Cuero Cotton Oil & Mfg. Co. v. Feeders' Supply Co. (Tex. Civ. App.) 203 S. W. 81; Early-Foster Co. v. A. P. Moore & Son (Tex. Civ. App.) 230 S. W. 789.

There is practically no dispute in the evidence regarding the execution of the written marketing contract. That contract was incorporated in and made a part of the original agreement circulated by the promoters of the prospective corporation, and was in legal effect signed by those who were to become members of the corporation when organized. That agreement contained these stipulations:

"The subscriber agrees, L to execute, when requested by the association, a marketing agreement, in terms substantially the same as those set forth in the agreement herein embodied; or at the option of the board of directors to be bound by the terms of the following marketing agreement," etc.

Then follows a copy of the contract under which the appellant is now operating. The evidence shows that after the corporation was formed the directors met and adopted a resolution ratifying and agreeing to stand by the marketing agreement embodied in the original agreement circulated among the subscribers. The contention here is that it required some such action on the part of the corporation to complete the contract, and, this action having taken place in Dallas county, that county was the place where the contract was finally executed. It is true that in law contracts are made where the final assent to its terms is given; but it has been held that when all the terms of a contract are agreed to between one contracting party and the agent of the other party, the fact that the contract is not to be binding until submitted to and ratified by the principal, who resides at another place, does not change the situs of the contract for venue purposes. Westinghouse Co. v. Train, 30 Tex. Civ. App. 200, 70 S. W. 324. We are of opinion that the rule applied in the case referred to should control in this instance. Here the option given to the board of directors was to proceed under the contract fully set out in the original articles of agreement signed by the members, or to have each of the members execute another agreement substantially the same as that one. The board in fact adopted and ratified the original agreement, which, it is conceded, had been signed by the appellees in Red River county, when presented to them by the promoters of the prospective corporation. If the corporation after its creation had power to formulate and present some other form of contract, it did not exercise that option. It appears that it had no authority to require the members to make a contract substantially different from that which is embodied in the original agreement. It is true this marketing contract was signed by the appellees before the appellant corporation came into existence. But it appears from the evidence that the marketing contract was a part of the organic agreement. It partook more of the nature of a prenatal agreement among the members of the prospective corporation than of a contract with the corporation after its formation. We therefore conclude that the evidence sustained the finding that the written contract was made in Red River county.

[2] Some time after the organization of the corporation, C. D. Lennox, one of the appellees, went to Dallas for the purpose of arranging with the appellant for the handling of 1,095 bales of cotton owned by him and his brother as tenants in common. Most of this cotton, according to the testimony of Lennox, was not subject to the written marketing contract then existing between the members and the association. He testified that he desired to make a special agreement, one which applied only to the handling of this particular lot of cotton. While in Dallas he discussed with the appellant's agents and representatives the terms upon which they would take charge of the cotton and place it upon the market. It is unnecessary at this time to discuss the details of that agreement, since the case was not tried upon its merits. Lennox also stated, in substance, that when he left Dallas the agreement between him and the appellant's agents was only tentative; that it was left open in order that he might consult his brother at Clarksville, who had an interest in the cotton; that both his and his brother's assent were later communicated from Clarksville over the long distance telephone, to appellant's agents at Dallas. If that be true, no binding contract was made while Lennox was in Dallas.

When he returned to Red River county, there was no existing agreement binding him to deliver the cotton to the appellant; nor was the appellant bound to handle the cotton upon any terms; the matter was left open. If that be true, the agreement was consummated in Red River county as found by the court. That testimony, however, is disputed by the appellant's witness; but the conflict presented an issue of credibility which the trial court had a right to settle.

We conclude that the testimony was sufficient to warrant the findings made by the trial court, and the judgment will be affirmed.