## SALLEY v. AMICABLE LIFE INS. CO.
### (No. 9005.)

Court of Civil Appeals of Texas. Galveston.
June 15, 1927.

Rehearing Denied July 6, 1927.

1. Insurance ⬤⟹84(2)—In insurance agent's suit for commissions, policy kept by agent held undelivered where neither agent nor those insured had complied with conditions.

Insurance agent *held* not entitled to commissions under agency contract making company rules a part thereof, where the agent kept the policy and neither he nor those insured, at time of cancellation, had complied with conditions which the company made necessary to effective delivery, notwithstanding contention that the agent held the policy for those insured.

2. Insurance ⬤⟹84(6)—In insurance agent's suit for commissions, pleadings alleging arbitrary rejection of applications without alleging bad faith held subject to demurrer.

Pleadings in suit by insurance agent for commissions, which alleged that company rejected applications arbitrarily, *held* subject to demurrer, where not alleging that such rejection amounted to bad faith.

3. Insurance ⬤⟹84(2) — Insurance company need not disclose to agent reason for rejecting applications, where agency contract incorporates rule stating that company will not disclose reasons.

Under contract of agency which incorporated the rules of the company, including rule stating that the company would not disclose the reason for declining applications, an insurance company may reject applications for insurance without being bound to justify or explain such action to its agent claiming commissions.

Appeal from District Court, Harris County; Roy F. Campbell, Judge.

Suit by R. C. Salley against the Amicable Life Insurance Company. Judgment for defendant, and plaintiff appeals. Affirmed.

R. H. Ward and Gordon O. McGehee, of Houston, for appellant.

Maurice Hirsch and Ben J. Brown, both of Houston, and Williams, Williams, McClellan & Lincoln, of Waco, for appellee.

GRAVES, J. Pursuant to a written contract of agency for it in procuring contracts of life insurance, appellant sued appellee to

recover commissions on nine applications theretofore obtained by him during July and August, 1925, those of Ruth Rayburn, H. Clyde Smith, Carey E. Smith, and Pessell Fowler for $25,000 each, those of Clay Fowler, Matt Moss and A. A. Huffstatler for $100,000 each, that of Thomas G. Hyslop for $75,000 and that of John B. Stribling for $50,000. Policies upon the Rayburn, Hyslop, and Clyde Smith applications were issued and mailed to appellant, together with some accompanying papers and directions, to be delivered upon the performance of certain conditions; the remaining six applications were rejected outright.

Under the contract of employment, appellant was to get 90 per cent. of the first year's premiums on the insurance he procured if they were collected within 30 days, but if not, then 85 per cent. He alleged that all the nine persons so presented were good, insurable risks; that Rayburn, Hyslop, and Clyde Smith had been so accepted after proper medical reports, and the policies on their lives accordingly issued and sent to him by mail for unconditional delivery, but thereafter, before he had delivered them to the beneficiaries, the appellee, without giving him any reason therefor, demanded their return to it for cancellation, with which demand he finally protestingly complied, not, however, having obtained the beneficiaries' consent thereto; that the other six applications, although favorably passed upon by the appellee under approving reports from its doctors, and after notice to him that the policies thereon would be issued in due course, had subsequently, without giving him any excuse therefor, been by it illegally, unlawfully, and arbitrarily rejected, and no policies at all issued thereunder; and that the company had wrongfully refused to pay him the agreed commissions on all of the nine applications, to his damage in the several specified amounts thereof.

In reply, as its brief here summarizes the matter, the appellee "set out in detail the terms and provisions of the contract between appellant and appellee, including rules and regulations of the company, which are made a part of the contract, and applied the contractual provisions both by way of demurrer and as defenses on the merits. It also pleaded and relied upon the general custom and usage of insurance companies to exercise the absolute and unqualified right to accept or reject any application for life insurance without being bound to justify such action or to inform the applicant, agent, or any other persons of the reason for such action, and this custom or usage was invoked in aid, if need be, of its contention that the written contract in question expressly conferred the absolute right to reject or accept without question proposed insurance risks. Appellee denied any wrongful or arbitrary purpose in declining the applications sued on herein, and asserted that it had no motive to injure or oppress appellant. It justified its action, if such were required, on grounds of common business prudence and good faith. For special answer concerning the three policies that were written on the lives of Ruth Rayburn, Thomas G. Hyslop and H. Clyde Smith, appellee pleaded that, prior to any delivery of the policies, it received additional information affecting the desirability of said parties as life insurance risks, which caused it to honestly conclude that it should not issue insurance on the lives of said parties. It alleged the discovery by it that these three applicants, as well as the other six, were part and parcel of a speculative scheme, and were separately and collectively dangerous risks from an insurance standpoint."

The answer at length detailed the averments concerning the alleged interrelation among, as well as appellee's reasons for declining, all the applications.

The trial court sustained the general demurrer to so much of appellant's cause of action as sought recovery upon the six rejected applications and dismissed the same, but permitted a jury hearing upon that affecting the three issued policies; at its conclusion, however, a verdict in favor of the appellee was instructed, and from the resulting judgment the appeal proceeds.

[1] At the outset of appellant's brief the correctness of the adverse judgment as a whole is said to be dependent upon whether or not the court erred in giving the peremptory instruction in favor of the insurance company as to the commissions claimed on the three issued policies; accepting that statement as both binding and true, it is only necessary to determine that question.

Considering the entire evidence, we conclude the action was not erroneous. Appellant's contrary position, as the résumé of his pleadings has presaged, rests upon the contention that there was, as between himself and the insurance company, what amounted in law to a delivery of these policies to the beneficiaries, thereby leaving in it no right of recall or subsequent rejection and entitling him to his commissions; but we think the undisputed facts show there was no such delivery. The contract of agency declared upon provided that the rules, regulations, and instructions of the company should be a part thereof, that the agent's stipulated commissions thereon were to be allowed when the first year's premiums on issued policies that had been delivered and accepted by the insured were collected and paid to the company in cash, that the agent should not pay, allow, or offer applicants for insurance any rebate of premium or other inducement not specified in the policy, but that he should, satisfactorily to the company, solicit all applications for insurance in it in accordance with its written or printed rules, and, under no condition, should he deliver or allow the delivery

of any policy unless the applicant was in good health at that time.

The applicable rules, regulations, and instruction thus made part and parcel of the agreement sued upon, in so far as material, further required that all three of these applicants should sign written acceptances of their policies, as well as prescribed forms of assignment thereof to the concern that was to pay the first year's premiums thereon, and that Hyslop was to sign an amended application, all of which papers were attached to and sent along with the policies themselves to the appellant.

The evidence wholly fails to show any waiver whatever of any one of these express conditions precedent to a delivery of the policies to the beneficiaries, except that requiring payment of the premiums in cash, in lieu of which the company seems to have agreed, subject to strict compliance in other respects, to accept a financing of them to be effected by a corporation known as the Producers' Credit Company. But not even that was carried out, as likewise were none of the unwaived requirements.

In substance, the most that may be justifiably said under the evidence to have transpired is this: A personal arrangement was made between the appellee's president and appellant that the latter might send in the applications of these people with the understanding that they would give him their notes for the first year's premiums, which he would assign in consideration of money he had received from it to the Producers' Credit Company, a corporation of Llano, Tex., to which concern also the applicants were all indebted, and that the policies when issued would be accompanied by blank assignment forms whereby those insured might assign them to the credit company, as its interest appeared, whereupon it in turn would pay to appellee the premiums thereon for the first year; that the applications having been sent in to appellee, it issued the policies thereon, and, respectively, on August 21, 28, and September 5, 1925, mailed them to the appellant, inclosing with them two kinds of receipt forms to it therefor—one applicable for cash, the other for note premium-payments—blank assignments of the policies to the credit company, which upon the face thereof provided that they should first be signed by the assured and duplicates thereof filed in the insurance company's home office before it should be required to notice them, as well as an amended application in the particular case of Mr. Hyslop, all of which papers it directed him in making delivery to have the beneficiaries execute, peremptorily specifying that the Hyslop policy must not leave his possession until the amended application had been duly signed, witnessed, and returned promptly to its home office; that the policies and these accompanying documents were received in due course of mail by appellant and held in his possession undelivered, without any of the specified acts upon the part of any of the applicants or the credit company having been performed, and without remittances by notes or cash for any of the premiums or further communication from him concerning the same, until September 15, 1925, when the appellee by letter demanded their return to it for cancellation.

No notes for the premiums were ever executed by any of the beneficiaries, no communication between any of them and the agent after their applications were first given is shown, other than the telephone conversation with Miss Rayburn, infra, nor was it ascertained that any of them were in good health either at the time the policies were so sent to the agent for conditional delivery, or at any time before they were returned to the company for cancellation.

As the appellee's brief well puts the matter:

"Not a scintilla of evidence would show that the company had agreed with him that he could extend credit on any other basis than by note. Not a scintilla of evidence would show that the company ever waived its requirement that the agent prior to delivery should ascertain that the applicant was in good health. Not a scintilla of evidence would support a finding that the company ever waived its requirement that the applicants should sign the written acceptances inclosed with the policies. Not a scintilla of evidence shows that it ever withdrew its express stipulation that the amended application should be signed before the Hyslop policy was delivered. Not a scintilla of evidence shows that it ever agreed to recognize the contract to assign the policies to the Producers' Credit Company unless and until the applicants had received the policies, settled the premiums therefor, and executed the regular form of assignment which was inclosed with the policies."

It is true appellant testified that, after receiving the policies, he wrote all the applicants of that fact, saying that he was holding them until the other six policies were issued, when all the nine would be delivered at one time to the credit company; also that he told Miss Ruth Rayburn, secretary and general manager of that company, the same thing by telephone, and that she said that was satisfactory. But there is not anywhere in his testimony any explanation of his failure to live up to his contract in the indispensable particulars referred to, nor any intimation that, after so receiving them, he was holding these policies as the agent of the beneficiaries; on the contrary, it clearly appears from his correspondence with the company and otherwise that he neither so assumed to act nor regarded himself, because he invariably refers to deliveries to be made in the future and to having been prevented from making them by the acts of the appellee; he neither told the beneficiaries he was holding the policies for them, nor did they in turn agree

to receive them and request that he hold them in their behalf, merely that he had received them and would make delivery at a later date; he therefore fails to make an analogous case to that of Insurance Co. v. Brown (Tex. Civ. App.) 166 S. W. 660, upon which he relies. Likewise the other discrepancies as pointed out differentiate the facts here from those controlling the other cases appellant invokes, principally those of Life Ass'n v. Harris, 94 Tex. 36, 57 S. W. 635, 86 Am. St. Rep. 813; Insurance Co. v. Blysard (Tex. Civ. App.) 207 S. W. 162; Denton v. Insurance Co. (Tex. Civ. App.) 231 S. W. 438.

Rather, when rightly applied, do all these authorities support our conclusion that the facts here appearing conclusively demonstrate that the antecedent conditions had never been met and that no delivery of the policies, constructive or otherwise, had been effected—in a word, that the entire matter was still tentative and executory at the time they were recalled; a discussion of them is deemed unnecessary.

Certainly no one of these applicants was shown to have done anything that would have bound him to receive the policy from the company, or pay it the premiums therefor, and, in such circumstances, either party may refuse to be bound by the proposal and call off the transaction. Cooley's Brief on Insurance, vol. 1, p. 416.

[2] If appellant's admission should not be taken as disposing of that part of his action based upon the six rejected applications, then we think the demurrer to it was rightly sustained, mainly because, after making the contract sued upon, which included the company's rules and regulations, a part of his pleadings, he nowhere alleges that the rejection was the result of such unusual and willful act as amounted to bad faith on the appellee's part; only that it was "arbitrary, without any just or legal cause, justification, or excuse, and in violation of the contract."

In addition to those previously mentioned, the contract by this inclusion of the rules also contained, among several others, trending toward the same general effect, these express provisions:

"The agent shall see that full and explicit answers are given to all questions so that the officers of the company may form independent judgment on the applications."

"The company will not disclose the reason for declining an application; neither will the application be returned to the agent or the applicant." * * *

"Doubtful risks, border line cases, and such as may have been previously rejected, postponed or limited for insurance, and similar cases, must be submitted to the home office before taking a regular application," etc.

[3] Under such a contract, it would seem that that the insurance company had the right, at least within the limits of good faith and in the exercise of an honest judgment, to select its own risks and reject applications for insurance, without being bound to justify that action to the party who so contracted with it by the statement of its reasons therefor. Mutual Life Ins. Co. of New York v. Hodnette (Tex. Civ. App.) 147 S. W. 615. See, also, Lea v. Union Central Life Ins. Co., 17 Tex. Civ. App. 451, 43 S. W. 927; Currier v. Life Ass'n (C. C. A.) 108 F. 737; Moore v. Security Trust Co. (C. C. A.) 168 F. 496.

There was no error in receiving the testimony complained of; it was admissible upon the question of the appellee's good faith in the action it took.

The judgment of the trial court has been affirmed.

Affirmed.